IN the INTEREST OF D.P., a person under the age of 18:

M.P., Appellant-Cross Respondent,†

v.

DANE COUNTY DEPARTMENT OF HUMAN SERVICES,
Respondent-Cross Appellant.

Court of Appeals

*No. 91-1918. Submitted on briefs May 18, 1992.—Decided July
30, 1992.*

(Also reported in 488 N.W.2d 133.)

†Petition to review denied.

314

315

For the appellant-cross respondent the cause was submitted on the briefs of *Shelley J. Gaylord* of Madison.

For the respondent-cross appellant the cause was submitted on the brief of *Maureen A. Plunkett,* assistant corporation counsel, of *Office of the Dane County Corporation Counsel* of Madison.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

EICH, C.J. M.P., a minor, appeals from a judgment,[1] entered after trial to a jury, terminating her parental rights to her child, D.P. We affirm.

Dane County instituted the proceedings on grounds that M.P. had failed to meet the conditions imposed by an order in earlier proceedings adjudging D.P. to be in need of protection or services (CHIPS) and placing him outside M.P.'s home. Prior to trial, M.P. moved to dismiss the county's petition on grounds that the judge in the earlier CHIPS proceedings failed to give the oral and written notices or "warnings" she says are required by secs. 48.415 and 48.356, Stats., as a precondition to termination of parental rights on CHIPS grounds.[2]

The trial court determined that proof of both the oral and written notifications are required by sec. 48.415(2)(a), Stats., in order for the termination hearings to proceed on CHIPS grounds and decided that neither notification met the requirements of sec. 48.356,

---

[1]The actual document is entitled "Findings of Fact, Conclusions of Law, Judgment and Order for Termination of Parental Rights." We construe it as a judgment.

[2]M.P.'s rights were terminated on grounds that she had failed to meet the conditions established by the judge in the CHIPS proceedings in order for the child to be returned to her home. Section 48.356(1), Stats., requires the judge entering the CHIPS order to orally notify the parent, if present in court, of the conditions for the child's return and also of any grounds for termination of parental rights which may be applicable. Section 48.356(2) requires that the final written order entered in such proceedings contain the same information.

Generally, sec. 48.415(2), Stats., authorizes termination of a parent's rights where the parent has failed to meet the conditions set in the CHIPS order for the child's return upon proof, among other things, that the order contained the notice required by sec. 48.356(2), Stats. The various statutes will be discussed in more detail in the body of the opinion.

317

Stats. The court denied M.P.'s motion to dismiss, however, after concluding that, in the absence of a court ruling to the contrary, the prior CHIPS orders must be presumed valid and thus could serve as the basis for termination. As indicated, the proceedings eventually resulted in an order terminating M.P.'s parental rights.

M.P. argues that the trial court erred when it: (1) denied her motion to dismiss the petition; (2) granted a motion to limit evidence filed by the child's guardian *ad litem;* (3) misinstructed the jury on the county's obligation to make "diligent efforts" to provide the services outlined in the CHIPS order before commencing proceedings to terminate parental rights; (4) denied her motion to excuse a juror for cause; and (5) allowed the jury access to the earlier CHIPS orders during its deliberations.

The county cross-appeals, challenging the trial court's ruling that the CHIPS warnings were inadequate.

We affirm the trial court's order, but for slightly different reasons. We conclude first, contrary to the trial court's ruling, that the CHIPS judge's written order contained the notification required by sec. 48.356(2), Stats. We also conclude, again contrary to the trial court, that sec. 48.415(2), Stats., does not require proof in subsequent termination proceedings that oral notice under sec. 48.356(1) was given to the parents in addition to the notice contained in the written CHIPS dispositional order. As a result, M.P.'s motion to dismiss was properly denied. We also conclude that the trial court did not err or exceed its discretion with respect to any of the other points raised by M.P.

## FACTS

The basic facts are not in dispute. M.P.'s child, D.P., was adjudged to be in need of protection or services on October 6, 1988, and was temporarily placed with his maternal grandmother. Orders extending that placement were entered in October, 1989, and October, 1990.

On June 14, 1990, Dane County petitioned the court to terminate M.P.'s parental rights on grounds that she had failed to meet the conditions set forth in the CHIPS orders as necessary for D.P.'s return to her home. M.P. moved to dismiss the petition, claiming that the notices required by secs. 48.356(2) and 48.415(2)(a), Stats., as a condition for termination of parental rights on CHIPS grounds were not properly given and that as a result, the trial court lacked jurisdiction to act on the county's termination petition.

Termination of parental rights on CHIPS grounds under sec. 48.415(2), Stats., is based on the child's having been placed outside the family home after being adjudged in need of protection or services, the parent's failure to meet the conditions established in the CHIPS order for the child's return—despite "diligent efforts" by the involved social services agency—and, the likelihood that that inability will continue into the future.[3] Section

---

[3]Section 48.415(2), Stats., provides as follows:

Continuing need of protection or services may be established by a showing of all of the following:

(a) That the child has been adjudged to be in need of protection or services and placed, or continued in a placement, outside his or her home pursuant to one or more court orders under s. 48.345, 48.357, 48.363 or 48.365 containing the notice required by s. 48.356(2).

(b) That the agency responsible for the care of the child and the family has made a diligent effort to provide the services ordered by the court.

(c) That the child has been outside the home for a cumulative

48.415(2)(a), Stats., requires as an additional element of proof in the termination proceedings that "one or more" of the CHIPs orders "contain [ ] the notice required by s. 48.356(2)."

As we have noted above, when the CHIPS judge determines that the child is in need of protection or services and out-of-home placement, sec. 48.356(1), Stats., requires the judge to "orally inform" the parent or parents who appear in court of any grounds for termination of their parental rights which "may be applicable," and of the conditions set by the court as necessary for the child's return to the parental home. Section 48.356(2) then states: "In addition to the notice required under [sec. 48.356](1), any written order which places a child outside the home . . . shall notify the parent or parents of the information specified under sub. (1)."

The trial court ruled that the October, 1988, CHIPS order did not contain the required notice, and that the CHIPS judge's oral "warning" to M.P. was similarly inadequate. The court denied the motion to dismiss the petition, however. It concluded that because the order had never been appealed, it was presumptively valid and thus could stand as a basis for the termination proceedings.

The case went to trial and the jury found that the Dane County Department of Social Services had made a diligent effort to provide the services ordered in the CHIPS dispositional order and, further, that M.P. had neglected, refused or been unable to meet the conditions for D.P.'s return and that there was a substantial likeli-

---

total period of one year or longer pursuant to such orders, the parent has substantially neglected, wilfully refused or been unable to meet the conditions established for the return of the child to the home and there is a substantial likelihood that the parent will not meet these conditions in the future.

hood that M.P. will not be able to meet those conditions in the future. The court entered judgment on the verdict terminating M.P.'s parental rights and the appeal and cross-appeal followed.

Because the adequacy of the notice given to M.P. in the CHIPS proceeding is central to the parties' dispute, we consider that issue first.

## I. ADEQUACY OF THE NOTICE

### A. *The Written Order*

The October 6, 1988, CHIPS order stated in detail the conditions necessitating D.P.'s removal from M.P.'s home and the conditions she was required to meet in order to secure the child's return. In general, the "removal conditions" emphasized M.P.'s emotional and behavioral problems, her aggressive personality and her serious parenting failures—in particular, her lack of responsiveness to D.P.'s medical needs and, in general, an overall lack of parental knowledge and skills and a failure to provide adequate care for D.P. The "return conditions" were that M.P. undergo treatment and counseling relating to aggression and receive comprehensive training in parenting. She was also directed to become involved in D.P.'s medical care.

Paragraph 11 of the order states:

That [M.P.] was warned by the court orally pursuant to sec. 48.356 [(2)], Wis. Stats., that grounds exist for termination of her parental rights under sec. 48.415, Wis. Stats. Specific grounds that may apply include abandonment under sec. 48.415(1) and continuing need of protection or services under sec. 48.415(2) of the statutes. A copy of the statute is annexed to th[is] order. [M.P.] was further warned by provision in court of a copy of the termination statutes to her and

321

incorporation of the statutes by attachment to this order.

At the foot of the order, the following appears:

**NOTICE TO PARENTS:** You are hereby notified pursuant to Wis. Stat. s. 48.356 that if as a result of your refusal, neglect, or inability, the conditions and directions as outlined in this court order are not complied with, such action on your part may result in grounds for termination of your parental rights to the above named child/ren. Further, the grounds for termination that may apply are as follows:

1. **ABANDONMENT** pursuant to Wis. Stat. s. 48.415(1) if you fail to visit or communicate with the above named child/ren for a period of six (6) months; or

2. **CONTINUING PROTECTION AND SERVICES** pursuant to Wis. Stat. s. 48.415(2) if you refuse, neglect, or are unable to change the conditions and comply with the conditions of this order for a period of one (1) year.

Attached to the order is a copy of sec. 48.415, Stats., in its entirety, with M.P.'s signature at the bottom, indicating that she had received a copy.

■ The county argues that any deficiency in the written notice provided in the October 6, 1988, order was cured because subsequent extension orders contained adequate notices. We need not reach that argument, however, because we conclude that the notice in the October, 1988, order met the requirements of sec. 48.356, Stats.

In *In re D.F.*, 147 Wis. 2d 486, 433 N.W.2d 609 (Ct. App. 1988), we held that a CHIPS order which simply attached copies of secs. 48.415 and 48.356, Stats.,

together with an acknowledgement that the parent had received a copy of sec. 48.356 and had "gone over it with the Intake Worker," failed to comply with the statutory requirement that notice of applicable grounds for termination be stated in the order. We said that:

> [T]he intent of the statute[s] was to warn the parent of any "applicable" grounds for involuntary termination and not merely to inform him or her of all possible grounds for termination, whether applicable or not. A specific warning was necessary to give the parent an opportunity to conform his or her conduct appropriately to avoid termination. *Id.* at 496, 433 N.W.2d at 613.

Here the CHIPS order was specific. The judge did not simply supply a copy of a lengthy statute, as in *In re D.F.,* but specifically advised M.P. in the order of the grounds for termination of parental rights that were applicable to her situation: failure to comply with the conditions stated in the CHIPS order and/or abandonment. And it briefly—but adequately, we believe—explained the import of those grounds.

## B. The Oral Notification

The trial court concluded that sec. 48.415(2)(a), Stats., also required proof in the termination proceedings that an adequate oral notification under sec. 48.356(1), Stats., had been given by the CHIPS judge, and that the notification given in this case failed to meet the statutory requirements.[4] M.P. asks that we uphold

---

[4]As it ruled with respect to the written notice—which, as indicated, it also found inadequate—the court concluded that the termination hearing could proceed because, never having been appealed, the 1988 CHIPS order was "presumptively valid."

that ruling on appeal. The county, in its cross-appeal, argues that the plain language of secs. 48.415(2)(a) and 48.356(2), Stats., requires only proof of the written notification in termination proceedings based on the earlier CHIPS adjudication. We agree with the county's position.

We consider it advisable to begin by referring once again to the statutory scheme, and to remind ourselves at the outset that this is not a CHIPS case but a termination-of-parental-rights case. The underlying statute at issue in this appeal is sec. 48.415(2), Stats., which sets forth the elements that must be proved when a parent's rights are sought to be terminated on grounds that the child, once adjudged to be in need of protection or services, has continued in that need. The regulations and requirements applicable to CHIPS proceedings—including the notification provisions of sec. 48.356—are applicable in these termination proceedings *only* insofar as they are expressly made so by sec. 48.415(2) (emphasis added). With that in mind, we begin our discussion with the CHIPS requirements.

Whenever, in a CHIPS proceeding, the judge determines that the child is in need of protection or services and out-of-home placement, sec. 48.356(1), Stats., requires that the judge "*orally inform*" the parent or parents appearing in court of any applicable termination grounds and of the conditions which must be met for the child to be returned to the home. (Emphasis added.) Section 48.356(2), Stats., then provides that, "[i]n addition to the [oral] notice required under sub. (1)," any "*written order*" which places a child outside the home "shall notify the parent . . . of the information specified in sub. (1)." (Emphasis added.)

The statute providing for termination of parental rights on continuing CHIPS grounds, sec. 48.415(2)(a),

Stats., refers only to the "written notice" language of sec. 48.356(2), Stats. It states that to establish the child's continuing need for protection or services as a basis for termination, it must be shown, among other things, that the CHIPS adjudication and placement was accomplished "pursuant to one or more *court orders . . . containing the notice* required by s. 48.356(2)." (Emphasis added.) As may be seen, the statute not only refers expressly to the written "court order," but its sole statutory reference is to subsection (2), the "written notice" portion of sec. 48.356. It makes no reference to sec. 48.356(1), which states the oral notice requirement for CHIPS proceedings.

M.P. and the concurring member of this court argue, however, that because the CHIPS statute, sec. 48.356(2), Stats., begins with the language "[i]n addition to the notice required under sub. (1)," it must be read to incorporate the oral notice requirements of sub. (1) into sub. (2) in cases where compliance with the latter subsection must be established in subsequent termination cases. Thus, say M.P. and the concurring opinion, sec. 48.415(2)(a), Stats., by requiring proof in the termination proceedings that the written order contained the requisite notice under sec. 48.356(2), Stats., must also require proof that the CHIPS court gave appropriate oral notification under sec. 48.356(1). They assert that this is the only way the statute may reasonably be read. Given the plain language of the statutes, we consider that an unreasonable construction.

While rather awkwardly written in that it appears to distinguish between "notice" and "information" when no reason for such a distinction is apparent,[5] sec.

---

[5]While the title to sec. 48.356, Stats., refers to a duty to "warn," and, as indicated, the text of the statute speaks in terms of "notice" and "information," we have treated the terms inter-

48.356(2), Stats., is plain and unambiguous in its import. By its reference to sec. 48.356(1), it gives the CHIPS judge two responsibilities when he or she finds the child in need of protection or services and out-of-home placement: first, to give any parent present at the hearing oral notice of applicable termination grounds and the conditions for return of the child; and, "[i]n addition," to include the same "notification" and "information" in the written order implementing that decision.

Section 48.415(2)(a), Stats., is equally plain. It incorporates *only* the notice required by sec. 48.356(2), Stats.—the *written* notice. And it specifically refers to CHIPS "*orders* . . . containing the [required notice] . . . ." (Emphasis added.) We see that express incorporation, and that plain language, as manifesting a legislative intent that, while the CHIPS judge must notify the parents of possible termination grounds in the written dispositional order *and* repeat the same information orally to any parent who is present in court at the time, proof that such oral notice was given is not required in later termination proceedings under sec. 48.415(2)(a); it is enough under that statute that the written CHIPS order contains the required information. And that makes sense.

First, the legislature has expressly recognized that there may be occasions when one or perhaps both parents will not be present in court, for sec. 48.356(1), Stats., only requires that the oral notification be given to "the parent or parents who appear in court." It would serve little purpose to adopt a statutory scheme that could effectively bar subsequent termination proceedings

changeably. *See In re D.F.*, 147 Wis. 2d 486, 433 N.W.2d 609. It is a notice requirement: one designed to give notice to the parents of the possible consequences of their failure to meet the conditions of the CHIPS order.

because warnings were not orally made to absent parties. That would be absurd. It makes much better sense to say that while the parent who comes to the hearing and then receives the written order will be twice warned, the written order is adequate proof in subsequent termination proceedings that the required warning was given.

Second, we agree with the county when it states that because the written CHIPS order is the "blueprint" for all the parties—the parents, applicable social service agencies, guardians *ad litem,* and even the courts—providing both reference and direction to all concerned, "[t]he focus and emphasis of notice for purposes of . . . [c]ontinuing CHIPS [as a] ground [for possible future termination proceedings] is logically on the notice given in the written order . . .."

Finally, we see no reason why the legislature, had it intended oral, in addition to written, notice of the return conditions and applicable termination grounds as a precondition for the termination proceedings, did not say so—either expressly, or by simply referring in sec. 48.415(2)(a), Stats., to *both* subsections of sec. 48.356. M.P.'s argument and the concurring opinion have the effect of rewriting the statute to so provide; but that is a legislative, not a judicial function.

We conclude, therefore, that the "court order [ ] . . . containing the notice required by s. 48.356(2)," Stats., as referred to in sec. 48.415(2)(a), Stats., is the written CHIPS order containing the required information. Proof that equivalent oral notification was given to the parent or parents at the hearing is not required by sec. 48.415(2)(a).

Thus, while we disagree with the trial court's ruling that such proof was required, because the court found other reasons to deny M.P.'s motion to dismiss, we reach the same result and affirm.

## II. MOTIONS IN LIMINE

M.P. moved to exclude from evidence any references to the 1988 CHIPS order on grounds that the inadequacy of the warnings rendered that order invalid as a basis for the subsequent termination proceedings; and she challenges the trial court's denial of her motion. In light of our holding on the adequacy of the notices in the CHIPS case, denial was proper.

M.P. also argues that the trial court erred when it granted the pretrial motion of D.P.'s guardian *ad litem* to bar any reference to provisions of the CHIPS order requiring that the county provide various services to D.P.'s grandmother—M.P.'s mother—with whom D.P. had been temporarily placed.

As we noted above, one of the things that must be established before parental rights may be terminated on CHIPS grounds is that the county social services agency made a diligent effort to see that the services ordered by the court were actually provided. M.P. argues that the court's ruling foreclosed her from arguing that the county had failed to meet that requirement. She refers us to the language of sec. 48.355, Stats., which states that CHIPS dispositional orders must specify the services to be provided to the child "and the family," and she argues that the jury should have been allowed to hear evidence as to the social worker's efforts and diligence in seeing that the services ordered for the grandmother were provided.

■

In granting the guardian *ad litem's* motion to bar such evidence, the trial court reasoned that the conditions set forth in the order for the child's return to M.P.'s home were directed to M.P., not to her mother; thus the provision of services to the grandmother was

irrelevant. We agree. The issue before the jury was termination of M.P.'s rights, and underlying that determination was *her* ability to meet the conditions stated in the order and the county's diligence in seeing that services were provided to assist *her* in meeting them. The trial court could properly conclude that evidence of county services provided to M.P.'s mother was irrelevant.[6]

## III. INSTRUCTIONAL ERROR

M.P. contends that the court's instruction to the jury on whether the county made a diligent effort to provide the services ordered by the CHIPS judge misstated the law and thus misled the jury, warranting a new trial.

The trial court instructed the jury as follows on the subject: "The words 'diligent efforts' mean the department has made reasonable efforts. It requires an earnest and energetic effort that is reasonable under the circumstances." The court's instruction differs only slightly from the pattern jury instruction on the subject:

[6]We think the trial court's analogy illustrates the propriety of its ruling:

What if . . . everybody was in agreement that [M.P.] had complied with the conditions established in [the CHIPS order] . . . would anybody . . . seriously maintain that because . . . the department didn't provide the services to meet th[e] conditions regarding her [mother], that [M.P.] couldn't have had her child back? . . .

. . ..

[Or, conversely, M.P.'s mother] could have turned out to be the most spectacular grandmother in the world and Human Services could have done a job like no one has ever seen them do before and . . . still I don't think that that would stop the requirement that [M.P.] meet [the] conditions [set for her in the order].

The words "diligent effort" mean that the department has acted reasonably, using ordinary and reasonable diligence, such as is customarily exercised by other departments under the same or similar circumstances. It requires an earnest and energetic effort. Wis J I—Civil 7040.

M.P. had requested an instruction reading as follows:

The words "diligent effort" mean that the department must have taken good faith steps in a persevering manner to implement the specific services ordered by the court with due respect to the unique characteristics of M.P. and D.P., and to the attitudes and level of cooperation of M.P. It means more than just a duty to jump through court-ordered hoops. It also means a responsibility to take reasonable steps to monitor and access compliance and progress and to return to court if necessary when a worker reasonably believes or should believe that some specific change in the court order needs to be made.

The statutes do not define the term "diligent effort," and M.P. has referred us to dictionary definitions of the term "diligent" that range from "not lackadaisical" and "not negligent" to "unremitting" and "laborious." We do not doubt that all three instructions—M.P.'s requested instruction, the pattern instruction and the instruction given by the trial court—can find support in one or more dictionaries. Thus, it is arguable that any of the three could be given without committing error. But the question is not whether a proposed and rejected instruction might be considered a correct statement of law, but whether the instruction as actually given by the court was legally erroneous.

The trial court has "wide discretion" in instructing the jury, and if its instructions adequately cover the law, we will not find error in its refusal to give a requested instruction even where the proposed instruction is equally error-free. *Northwestern Nat'l Ins. Co. v. Nemetz,* 135 Wis. 2d 245, 263–64, 400 N.W.2d 33, 41 (Ct. App. 1986).

M.P. asserts that termination of parental rights cases are important, and that the higher burden of proof required in such proceedings and the "recognized weight of the interest at stake," require a higher level of performance on the part of the social services agency than the "reasonable," "earnest" and "energetic" diligence described in the trial court's—and the pattern—instructions. We are not persuaded.

When we construe statutes, our task is to ascertain legislative intent; and in doing so, our first resort is to the language of the statute itself. *State v. Eichman,* 155 Wis. 2d 552, 560, 456 N.W.2d 143, 146 (1990). The word "diligence" appears by itself in sec. 48.415(2)(c), Stats; there is no modifier or explanatory reference, as the legislature could have inserted in the statute had it intended the word to import something higher than the standard of reasonableness embodied in the pattern jury instruction and in the instruction given by the trial court in this case.

We do not believe the fact that termination of parental rights cases can have a significant effect on the parties and the public—or that the law assigns a middle burden of proof in such cases—is evidence that the legislature's use of the unamplified word "diligent" in sec. 48.415(2)(c), Stats., was intended to convey something

331

higher and greater than reasonable, earnest and energetic effort.[7]

Because the court's instruction fairly stated the applicable law, it was not error to decline to give the one requested by M.P.

## IV. JURY SELECTION

M.P. next argues that the court erred when it denied her request to excuse a juror for cause. No record was made of the *voir dire,* but counsel for M.P. placed her objections on the record the following day. She argued that one of the jurors had had experience with children placed in his home and had expressed his opinion on the desirability of the department of social services being involved in the lives of such children. Counsel also asserted that the juror had referred to a black person as a "Negro" and expressed negative feelings about the parents of children placed in his home and about the migration of welfare families from Illinois to Wisconsin.

The trial court responded:

> Well, one of the things that was pointed out . . . was that [the juror] was rehabilitated on just about every point that [counsel has] raised, and it is true that his answers were as stated except I do think that he stated that he had negative feelings about some of the parents of the kids that shared his home with him when he was growing up, not all of the parents, and,

[7]As we have noted, the court's instruction tracks the pattern instruction. Although they are not infallible, we generally consider the pattern instructions "persuasive" on the points of law they state. *State v. Gilbert,* 115 Wis. 2d 371, 379, 340 N.W.2d 511, 515–16 (1983). We consider them so in this case, and M.P. has not persuaded us otherwise.

for example, on the issue of . . . large black families coming to this state for welfare, he said his concern was not with the families but with the system that allowed that kind of distinction in payment schedules and I was impressed by the fact that he did not criticize folks for taking advantage of this, and, as a matter of fact, I think he said that outright. He also did say about social workers that there are some . . . who don't work hard and that in every profession you can find better and worse people.

So while I understand the concern that defense counsel has, I think that's more [a] concern that goes to a preemptory challenge . . . and so I . . . deny the request that he be excused for cause, finding that he could be impartial, at least based upon the answers he gave to the questions.

■ Whether to dismiss a juror for cause rests with the discretion of the trial court. *State v. Zurfluh,* 134 Wis. 2d 436, 438, 397 N.W.2d 154 (Ct. App. 1986). In *Burkes v. Hales,* 165 Wis. 2d 585, 590–91, 478 N.W.2d 37, 39 (Ct. App. 1991), we discussed at some length the scope of our review of a trial court's discretionary ruling:

A court exercises discretion when it considers the facts of record and reasons its way to a rational, legally sound conclusion. It is "a process of reasoning" in which the facts and applicable law are considered in arriving at "a conclusion based on logic and founded on proper legal standards." Thus, to determine whether the trial court properly exercised its discretion in a particular matter, we look first to the court's on-the-record explanation of the reasons underlying its decision. And where the record shows that the court looked to and considered the facts of the case and reasoned its way to a conclusion that is (a) one a reasonable judge could reach and (b) consis-

tent with applicable law, we will affirm the decision even if it is not one with which we ourselves would agree.

It need not be a lengthy process. While reasons must be stated, they need not be exhaustive. It is enough that they indicate to the reviewing court that the trial court "undert[ook] a reasonable inquiry and examination of the facts" and "the record shows that there is a reasonable basis for the . . . court's determination." Indeed, "[b]ecause the exercise of discretion is so essential to the trial court's functioning, we generally look for reasons to sustain discretionary decisions." [Citations and footnote omitted.]

The trial court's explanation of its reasons for denying M.P.'s motion meets these criteria, and because the result reached is both reasonable and consistent with the facts of record and the applicable law, we may not overturn its discretionary decision.

## V. JURORS' ACCESS TO THE CHIPS ORDERS

Determining what exhibits may go to the jury is also committed to the trial court's discretion, and the rules just discussed apply equally here.

M.P. argues at length that the trial court exceeded its discretion in allowing the 1989 and 1990 CHIPS extension orders to go to the jury. As indicated above, to determine that question, our first resort is to the trial court's explanation of the reasons underlying its decision. *Burkes,* 165 Wis. 2d at 590, 478 N.W.2d at 39. Nowhere in M.P.'s brief, however, does she refer us to the point in the record where the trial court's decision to

allow the exhibits to go to the jury room may be found.[8] The record in this case approaches 4,000 pages, and "it is not the duty of this court to sift and glean the record *in extenso* to find facts which will support an assignment of error." *Keplin v. Hardware Mut. Casualty Co.*, 24 Wis. 2d 319, 324, 129 N.W.2d 321, 323 (1964), *reh'g denied*, 24 Wis. 2d 319, 130 N.W.2d 3 (1964). The rules of appellate procedure require briefed arguments to contain citations to portions of the record relied on; and we noted in *State v. Shaffer*, 96 Wis. 2d 531, 545-46, 292 N.W.2d 370, 378 (Ct. App. 1980), that an argument violating that rule "is inadequate and . . . [i]n the future this court will refuse to consider such an argument, or summarily affirm on the issue."

We thus decline to consider the argument further.[9]

*By the Court.*—Judgment and order affirmed.

---

[8]The only citation to the record offered in support of the argument is to a paragraph in the court's instructions to the jury indicating that the two orders would be included in the materials to which the jury would be given access.

[9]We note in this regard that M.P.'s argument focuses on findings in the 1989 and 1990 orders that, with respect to the conditions stated for D.P.'s return, the department of social services had made "reasonable efforts" to return D.P. to his mother's care. The trial court, in its instructions referring to those orders, specifically admonished the jurors that any findings made in that regard are "separate from and unrelated to the ['reasonable diligence'] questions you will answer in the verdict." The court went on to caution the jurors that the findings in the CHIPS orders "should not affect your decision as to whether the department was diligent in its efforts to provide the services to meet the conditions for [D.P.'s] return."

Thus, even if M.P. had been able to establish error on this point, it would be harmless in light of the court's cautionary instructions to the jury.

SUNDBY, J. (*concurring*). I differ with the court only with respect to the termination of parental rights warnings. First, I conclude that both the oral and written warnings given by the trial court satisfied sec. 48.356, Stats.[1] I would not, therefore, reach the issue as to whether a written warning is sufficient to provide a jurisdictional basis for a CHIPS termination under sec. 48.415(2), Stats. Second, if we decide that issue, I conclude that both the oral and written warnings required by sec. 48.356 must be given in order to satisfy sec. 48.415(2).

The record of the dispositional hearing shows that the mother's counsel advised the court as follows:

> I think that [the mother] understands the implications of the [dispositional] Order herself at this time. So, I'm satisfied that she's received a full explanation of the content of this document and that she also understands the nature of the warnings that you are going to give her and be providing her today . . ..

In response to questions from the trial court, the mother indicated that she understood the terms of the order, that she had gone over it with her attorney and with the guardian ad litem, and that they had explained the order to her. The court then learned that the mother

---

[1]Section 48.356, Stats., provides:

(1) Whenever the judge orders a child to be placed outside his or her home because the child has been adjudged to be in need of protection or services under s. 48.345, 48.357, 48.363 or 48.365, the judge shall orally inform the parent or parents who appear in court of any grounds for termination of parental rights under s. 48.415 which may be applicable and of the conditions necessary for the child to be returned to the home.

(2) In addition to the notice required under sub. (1), any written order which places a child outside the home under sub. (1) shall notify the parent or parents of the information specified under sub. (1).

had not read the order and took a brief recess while she read it. After recess, the court told the mother that she had been provided a form advising her that her parental rights could be terminated if the conditions necessary to return her child to her home were not met or if she abandoned the child. The court instructed the mother to go over the form with her counsel and with the guardian ad litem. The court then instructed the mother to listen carefully while the court explained the applicable grounds for possible termination of the mother's parental rights. The court advised the mother as follows:

> If the conditions and directions as outlined in the Court Order are not complied with, the action on your part may result in grounds for termination of your parental rights.
> Also, if you fail to visit [the child] for a period of six months, your parental rights could be terminated; or if you refuse, neglect or are unable to change the conditions and comply with the conditions of this Order.
> You have the entire law in front of you. You should study it carefully. Basically, if the conditions which led to the removal which are necessary to return the child home to you are not met; or if you abandon a child by failing to visit or communicate with the child for six months, your rights could be terminated. Do you have any questions about that?

The mother responded, "No."

Short of reading the order itself, I do not see how the court could have been more complete in its explanation. There is no requirement in the law that the trial court read the order to a parent in order to satisfy the notice requirement of sec. 48.356(1), Stats.

The written order contained the following:

That [the mother] was warned by the court orally pursuant to sec. [48.356(2)], Wis. Stats., that grounds exist for termination of her parental rights under sec. 48.415 Wis. Stats. *Specific grounds that may apply include abandonment under sec. 48.415(1) and continuing need of protection or services under sec. 48.415(2) of the statutes.* A copy of the statute is annexed to the order. [The mother] was further warned by provision in court of a copy of the termination statutes to her and incorporation of the statutes by attachment to this order. [Emphasis added.]

A copy of sec. 48.415, Stats., was attached to the written order. In *In re D.F.,* 147 Wis. 2d 486, 433 N.W.2d 609 (Ct. App. 1988), we held that the notice requirements of sec. 48.356, Stats., were not satisfied by simply attaching the statute to the dispositional order. However, in this case the trial court did not attempt to substitute the attachment for the requirements of sec. 48.356. The trial court properly gave the mother the oral warnings required by subsection (1) and the written warning required by subsection (2).

I would let the matter rest simply by finding that the warnings given by the trial court satisfy sec. 48.356, Stats. The court concludes that sec. 48.415(2), Stats., does not require proof that oral notice was given to the mother of the applicable grounds for termination of her parental rights, as required by sec. 48.415(1), Stats. The court thus unnecessarily invites reversal of our decision. The supreme court may be loath to allow our decision to stand based as it is upon what I conclude is an erroneous view of the law.

Section 48.415, Stats., provides that grounds for termination of parental rights may include the child's continuing need of protection or services. Subsection (2) provides:

Continuing need of protection or services may be established by a showing of all of the following: (a) That the child has been adjudged to be in need of protection or services and placed, or continued in placement, outside his or her home pursuant to one or more court orders under s. 48.345 [disposition], 48.357 [change in placement], 48.363 [revision] or 48.365 [extension] *containing the notice required by s. 48.356(2).* [Emphasis added.]

Section 48.356(1), Stats., requires oral notice by the trial judge to the parent or parents of any applicable grounds for termination of parental rights under sec. 48.415, Stats. Section 48.356(2), Stats., provides: "*In addition to the notice required under sub. (1),* any written order which places a child outside the home under sub. (1) shall notify the parent or parents of the information specified under sub. (1)." (Emphasis added.)

The court concludes that because sec. 48.356(2), Stats., imposes the written-order notice requirement, the italicized language is surplusage. I disagree. I conclude that the duty to warn under sec. 48.356(2) includes by incorporation the oral warning required under subsection (1).[2] The legislative history of secs. 48.356 and 48.415, Stats., supports my conclusion. The statutes were created by ch. 330, Laws of 1979 and are, therefore, *in pari materia.*

The statutes were effective September 1, 1980. Section 14, ch. 330, Laws of 1979. In general, the act applied to proceedings for the termination of parental rights commenced on or after the effective date of the act. Section 12(1), ch. 330, Laws of 1979. Thus, the parents

---

[2]The majority unfairly suggests that I would rewrite the statute. When a statute is ambiguous, it is our duty to construe the statute according to the legislature's intent. *State v. Vonesh,* 135 Wis. 2d 477, 482–83, 401 N.W.2d 170, 173 (Ct. App. 1986).

of a child subject to a dispositional order placing the child outside the parents' home before September 1, 1980, received no notice of the applicable grounds for termination of their parental rights. To respond to this deficiency, the legislature created ch. 7, Laws of 1981. Section 2(1) of the session law required the circuit court to send notice of grounds for termination of parental rights to the parents of any CHIPS child removed from the home before September 1, 1980. Section 2(2) required that the notice set forth the grounds for termination of parental rights and inform the parents that the court had set aside a time for the parents to appear before the court for the purpose of having the contents of the notice explained. Chapter 7, Laws of 1981 demonstrates the legislature's concern that the court orally explain to the parents the grounds for termination of their parental rights. The legislature was not satisfied with only a written notice. I consider that ch. 7, Laws of 1981 is contemporaneous legislative construction of the requirements of notice of termination of parental rights.

Our decision today effectively repeals sec. 48.365(1), Stats. Failure of the trial court to give the oral warning required by the statute has no effect upon the dispositional order and, now, no effect upon an order terminating parental rights.

In *Santosky v. Kramer,* 455 U.S. 745, 753-54 (1982), the United States Supreme Court stated:

> [P]ersons faced with forced dissolution of their parental rights have a more critical need for procedural protections than do those resisting state intervention into ongoing family matters. When the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures.

The nature of the process due in parental rights termination proceedings turns on the balancing of three distinct factors: the private interests affected by the proceedings; the risk of error created by the state's chosen procedure; and the countervailing governmental interest supporting use of the challenged procedure. *Id.* at 754. In parental rights termination proceedings, the private interest affected is commanding. *Id.* at 758. The risk of error from abandoning oral notice of the grounds for termination of parental rights is substantial. The countervailing government interest favoring a written-notice only procedure is nonexistent.

Perhaps giving only written notice to a parent of the grounds for terminating his or her parental rights will survive a due process challenge. However, I submit that the Wisconsin legislature has concluded that oral warning by a judge is required before the state exercises its last-resort power over the family. I am certain that a parent pays attention when the judge says, "listen carefully." However, legal documents daunt all but those who prepare them. Such documents are not a fair or adequate substitute for the judge's spoken word.