Fred NELSON, Plaintiff-Respondent,

v.

James TAFF, and Taff & Taff Builders, Inc.,
Defendants-Appellants.†

Court of Appeals

*No. 91–2451. Submitted on briefs June 24, 1992.—Decided
March 4, 1993.*

(Also reported in 499 N.W.2d 685.)

†Petition to review denied.

For the defendants-appellants the cause was submitted on briefs of *Arthur Thexton* of Madison.

For the plaintiff-respondent the cause was submitted on the brief of *James R. Cole* and *Richard L. Bolton* of *Stroud, Stroud, Willink, Thompson & Howard* of Madison.

Before Gartzke, P.J., Dykman and Sundby, JJ.

DYKMAN, J. James Taff and Taff & Taff Builders, Inc. appeal from a judgment for $1,514,326 plus costs and attorneys' fees of approximately $22,000, and from an order denying relief under sec. 806.07, Stats., from that judgment. Taff asserts that the trial court erred by refusing to direct a verdict, by refusing to give a requested instruction and by denying relief from the judgment. We affirm.

In 1978, Peter Dwyer, Tilman Christianson and Donald Raffel formed the PDT Partnership to develop land at the corner of North Sherman and Aberg Avenues in Madison. James Taff became involved with the partnership, and Taff & Taff became the general contractor for the project known as "Maple Wood Condominium Homes." Various witnesses testified that James Taff was a partner in the project, that the entity formed was a general partnership and that James Taff was well aware that the partnership was not a limited partnership.

Between June 1978 and April 1979, PDT brought in ten "investors" who each contributed $10,000 to the project. There was conflicting testimony, but the jury believed Fred Nelson, who testified that in February 1979, he and his wife had a meeting with James Taff, at

Poole's supper club, just across the street from the project. Nelson and his wife were interested in the project but they quizzed Taff on the nature of the interest they could buy. Taff told them that they would be purchasing a limited partnership interest. Nelson pressed Taff on the subject, inquiring as to what would happen if the project failed. Taff explained that the project would not fail because of his experience and reputation, but that if it did, the Nelsons' exposure would be limited to their $10,000 investment.

Maple Wood failed. The partnership filed a petition in bankruptcy. The partnership's bankruptcy trustee sued Nelson, alleging that Nelson was a partner in Maple Wood and liable for its debts. Ultimately, the trustee obtained a judgment against Nelson for nearly $400,000. Unable to pay the judgment, Nelson began this action against James Taff and Taff & Taff, alleging fraud, violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968, and the Wisconsin Organized Crime Control Act, secs. 946.80 - 946.88, Stats.

The jury found that James Taff either knowingly made a false representation to Nelson, or he did so recklessly, without caring whether it was untrue. It found that Taff intended to deceive Nelson, and that Taff made the statement to induce Nelson to act on it. The jury decided that Nelson believed Taff's false representation and relied on it to his detriment. Taff had stipulated that Nelson was damaged in the amount of the $400,000 judgment, and the jury found additional damages of $105,000. As required by RICO, the trial court trebled the jury's verdict and entered judgment against James Taff and Taff & Taff for $1,514,326 plus costs and Nelson's actual attorneys' fees. *See* 18 U.S.C. § 1964(c).

After judgment was entered, Nelson negotiated a settlement of the trustee's judgment against him. In exchange for paying $16,000 and relinquishing a $700 claim against PDT, Nelson received a satisfaction of the $400,000 judgment. James Taff and Taff & Taff moved for relief under sec. 806.07(1)(f)-(h), Stats. The trial court denied the motion, and this appeal resulted.

## DIRECTED VERDICT

James Taff asserts that any statements he made concerning the nature of the partnership were representations of law and, therefore, not actionable. He concludes that the trial court erred by not granting him a directed verdict at the end of the plaintiff's case.

■■

Misrepresentations of law are generally not actionable as fraud. *Bentley v. Fayas,* 260 Wis. 177, 184, 50 N.W.2d 404, 408 (1951). But there are exceptions to this rule. *Ritchie v. Clappier,* 109 Wis. 2d 399, 402, 326 N.W.2d 131, 133 (Ct. App. 1982).

> "It is not . . . universally true that a misrepresentation of the law is not binding upon the party who made it. . . .. Where one who has had superior means of information professes a knowledge of the law, and thereby obtains an unconscionable advantage of another who is ignorant and has not been in a situation to become informed, the injured party is entitled to relief as well as if the misrepresentation had been concerning [a] matter of fact."

*Id.* (quoting *Rusch v. Wald,* 202 Wis. 462, 464, 232 N.W. 875, 876 (1930)).

Other authority also holds that the general rule is not as rigid as Taff suggests. In *Sawyer v. Pierce,* 580 S.W.2d 117, 125 (Tex. Civ. App. 1979), the court said:

One notable exception to the general rule is that where one party who possesses superior knowledge as to the law takes advantage of the other party's ignorance in that respect, and intentionally makes a misrepresentation concerning the law for the purpose of deceiving the other party and actually succeeds in that respect, [the person making the fraudulent misrepresentation] may be held responsible for his conduct.

In *Miller v. Osterlund*, 191 N.W. 919, 919 (Minn. 1923), the court said:

But it is not always easy to classify representations as of law or fact, often they are of mixed law and fact, and courts should not be too indulgent of defendants who have made misrepresentations as to matters of which they should be expected to have knowledge, and of which the other party ordinarily would not have knowledge. A misrepresentation though involving [a] matter of law will be held actionable if it amounts to an implied assertion that facts exist that justify the conclusion of law which is expressed.

In *National Conversion Corp. v. Cedar Bldg. Corp.*, 246 N.E.2d 351 (N.Y. 1969), the court commented on the modern trend that requires frauds to suffer the consequences of their acts:

Most important it is that the law has outgrown the over-simple dichotomy between law and fact in the resolution of issues in deceit. It has been said that "a statement as to the law, like a statement as to anything else, may be intended and understood either as one of fact or one of opinion only, according to the circumstances of the case." . . .
Moreover, the modern rule extends even further to cover a false opinion of law if misrepresented as a

sincere opinion, as in the case of any other opinion, where there is reasonable reliance.

*Id.* at 355 (citations omitted).

RESTATEMENT (SECOND) OF TORTS § 545 (1977) also recognizes that misrepresentations of law are actionable:

(1) If a misrepresentation as to a matter of law includes, expressly or by implication, a misrepresentation of fact, the recipient is justified in relying upon the misrepresentation of fact to the same extent as though it were any other misrepresentation of fact.

(2) If a misrepresentation as to a matter of law is only one of opinion as to the legal consequences of facts, the recipient is justified in relying upon it to the same extent as though it were a representation of any other opinion.

Professor Prosser notes:

The present tendency is strongly in favor of eliminating the distinction between law and fact as "useless duffle of an older and more arbitrary day," and recognizing that a statement as to the law, like a statement as to anything else, may be intended and understood either as one of fact or one of opinion only, according to the circumstances of the case. Most courts still render lip service to the older rule, but they have been inclined whenever possible to find statements of fact "implied" in representations as to the law.

W. PROSSER, LAW OF TORTS 109, at 725 (4th ed. 1971) (footnotes omitted).

██

We conclude that whether the changing view as to the remedy for fraudulent misrepresentation of law is viewed as an exception to the general rule, as we noted in *Ritchie,* or an elimination of the law-fact difference as noted by Prosser and the RESTATEMENT, the result is the

same. One who misrepresents the law after professing a knowledge of the law will not be able to escape the consequences of his or her misrepresentation by asserting that the misrepresentation was one of law only.

A case should be taken from the jury and a verdict directed only if the evidence gives rise to no dispute as to material issues, or when the evidence is so clear and convincing that unbiased and impartial minds could reasonably come to but one conclusion. *D'Huyvetter v. A.O. Smith Harvestore Products*, 164 Wis. 2d 306, 331, 475 N.W.2d 587, 596 (Ct. App. 1991). We therefore examine the evidence that Nelson produced to determine whether, under the standard we have just discussed, there was a complete lack of evidence that James Taff misrepresented to the Nelsons the nature of the partnership developing Maple Wood.

James Taff admitted that on June 8, 1978, Taff & Taff builders signed a contract with PDT for the construction of Maple Wood. He signed the contract. PDT's partnership agreement, dated June 5, 1978, was signed in Taff's office. Taff read the partnership agreement and asked whether it was a limited or a general partnership. He was told that the partnership was a general partnership, and he believed that it was a general partnership. We have already discussed Nelson's testimony as to James Taff's statements to him and his wife in February 1979. We conclude that the trial court did not err when it denied James Taff's motion for a directed verdict at the end of Nelson's case.

## JURY INSTRUCTION

■James Taff's assertion that the trial court erred by submitting an erroneous jury instruction on misrepresentation is closely tied to his previous assertion that misrepresentations of law are not actionable. The trial court has wide discretion in instructing a jury, and if its instructions adequately cover the law, there is no erroneous exercise of discretion when the court refuses to give a requested instruction, even if the proposed instruction is correct. *In Interest of D.P.*, 170 Wis. 2d 313, 331, 488 N.W.2d 133, 140 (Ct. App. 1992). The four factors James Taff included in his requested jury instruction are contained in the instruction given, Wis J I—Civil 2401, albeit in a different order and worded somewhat differently.[1] We conclude that Wis J I—Civil 2401 correctly states the law of misrepresentation and intentional deceit. The trial court did not erroneously exercise its discretion by using that instruction rather than the one James Taff submitted.

## RELIEF FROM JUDGMENT

Nelson settled the trustee's judgment against him for a fraction of its amount. Defendants moved for relief from the judgment under sec. 806.07(1)(f)-(h), Stats.

---

[1] James Taff's requested instruction reads:

If you find that the defendant Taff misrepresented to plaintiff that if he became a partner in PDT the most he could lose was the amount of his investment, you may find defendant liable to plaintiff only if you find each of the following statements to be true:
(1) Plaintiff acted with prudence and diligence.
(2) The defendant misle[d] or deceived the plaintiff.
(3) There existed a relationship of trust and confidence between the plaintiff and the defendant; and
(4) The defendant possessed superior knowledge and skill as compared to the plaintiff.

The trial court denied the motion. On appeal, defendants have abandoned the argument that sec. 806.07(1)(f) is applicable to them.

Section 806.07(1), Stats., reads in relevant part as follows:

> On motion and upon such terms as are just, the court may relieve a party or legal representative from a judgment . . . for the following reasons:
>
> . . ..
>
> (g) It is no longer equitable that the judgment should have prospective application; or
>
> (h) Any other reasons justifying relief from the operation of the judgment.

A circuit court's order denying a motion for relief under sec. 806.07, Stats., will not be reversed on appeal absent an erroneous exercise of discretion. *State ex rel. M.L.B. v. D.G.H.*, 122 Wis. 2d 536, 541, 363 N.W.2d 419, 422 (1985). We will not find an erroneous exercise of discretion if the record shows that the trial court exercised its discretion and that there is a reasonable basis for its decision. *Id.* at 542, 363 N.W.2d at 422.

*Section 806.07(1)(g), Stats.*

For assistance in construction of sec. 806.07, Stats., we may refer to federal cases interpreting Rule 60(b) of the Federal Rules of Civil Procedure, upon which sec. 806.07 is based. *M.L.B.*, 122 Wis. 2d at 542, 363 N.W.2d at 422.

In *Kock v. Government of Virgin Islands,* 811 F.2d 240, 244-45 (3d. Cir. 1987), the court explained that the "no longer equitable" clause of Rule 60(b)(5) refers to the powers of a court of equity:

> The permissible revision of a decree having prospective effect is materially and legally different from the impermissible alteration of a final judgment having conclusive, res judicata effect. In the instant case, the judgment initially entered was final at law, and not prospective in equity. Thus, the defendant was not entitled to relief under Rule 60(b)(5).

*Id.* at 245 (citation omitted).

We conclude that sec. 806.07(1)(g), Stats., applies only to equitable actions in which the decree has a prospective effect. Because this is an action at law, relief under sec. 806.07(1)(g) is not available to defendants. The trial court therefore did not erroneously exercise its discretion by refusing to grant relief pursuant to this paragraph.

### Section 806.07(1)(h), Stats.

We are to be mindful that finality of judgments is important, and that sec. 806.07(1)(h), Stats., should be used "only when the circumstances are such that the sanctity of the final judgment is outweighed by 'the incessant command of the court's conscience that justice be done in light of *all* the facts.' " *M.L.B.*, 122 Wis. 2d at 550, 363 N.W.2d at 426 (quoting *Bankers Mortgage Co. v. United States*, 423 F.2d 73, 77 (5th Cir.), *cert. denied*, 399 U.S. 927 (1970)). The trial court considered this law and applied it to the facts of this case.

The trial court explained, for five pages, the various factors it felt were applicable. It noted that it was undisputed that James Taff had filed a voluntary petition in bankruptcy, lessening the effect on him of a grant of relief. It observed that the settlement was obtained through the work of Nelson and his counsel, not James Taff. The court felt it would not be fair for the benefits

of this negotiation to fall to defendants. The court noted that in punitive damage and collateral source cases, plaintiffs recover more than their damages, so that the result in this case was not unique. The trial court was concerned that if relief were granted when an error was made in predicting future damages, many personal injury cases would have to be reopened under such a rule.

The trial court was impressed with the fact that defendants stipulated to the nearly $400,000 judgment as being a measure of Nelson's damages. We, too, are impressed with that fact. Had defendants desired, they could have taken the position at trial that they do in their sec. 806.07(1)(h), Stats., motion. True, defendants had no way to know that a settlement in the amount of $16,700 would occur. But they could have considered the likelihood that the trustee would settle her case against Nelson for a reduced amount. Discovery would have enabled defendants to ascertain that Nelson would obtain a substantial discount, and that likelihood could have been shown to the jury and argued as a means to reduce the verdict.

The trial court's opinion reasons from the facts of record and uses the proper legal standards to reach a conclusion based on logic. It is a textbook example of the proper exercise of judicial discretion. We affirm.

*By the Court.*—Judgment and order affirmed.

GARTZKE, P.J. *(concurring).* According to the dissenting opinion, Nelson's damages should be recomputed. I disagree.

The parties stipulated that the judgment against Nelson for $399,775 was part of his damages in his action against Taff. It is irrelevant that Nelson was able later to settle that judgment after winning his suit against Taff. Judgment debtors and creditors frequently

settle judgments for various reasons, sometimes for less and sometimes for more. How the market operates in that regard is not for our review. When Nelson successfully bought off the judgment for $16,000, he was entitled to act for his own benefit and not Taff's. It is of no more concern to us that Nelson settled the judgment for $16,000 than would be the fact that he could not settle for less than $399,775.

No matter what we do, a windfall will result to Nelson or to Taff. If we affirm the trial court's ruling, then Nelson has an enforceable judgment against Taff for $1,199,326 and he need not pay the trustee in bankruptcy the $399,775 judgment against him, all at a cost of $16,000. If the trial court recomputes Nelson's damages with an eye to excusing Taff from paying more than $16,000 or so, then Taff enjoys a windfall equal to the reduction.

Since a windfall will result no matter what we do, we should look to Taff's conduct and the law which gave rise to the $1,199,326 judgment against him. The jury found that Taff intentionally made a false representation to Nelson, and that Nelson believed the misrepresentation and he relied on it. The jury found that a conspiracy existed to induce individuals to invest in the PDT Partnership under the false pretense that their total liability was limited to the loss of their investment, Taff was a member of that conspiracy, and Nelson was induced to invest in the partnership by the false pretense that his liability was limited to the loss of his investment. The jury found that Taff engaged in a pattern of racketeering activity and Nelson was damaged as a result. The law trebled the damages. Given the nature of Taff's conduct, and the law, I see no reason to give him a windfall on grounds that Nelson will otherwise enjoy a windfall.

SUNDBY, J. (*dissenting*). Nelson's damages included, by stipulation, a judgment against him by the federal bankruptcy court in the amount of $399,775.43. That amount was trebled under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968, and Wisconsin's counterpart, the Wisconsin Organized Crime Control Act (WOCCA), secs. 946.80-946.86, Stats., resulting in a judgment against the defendants (hereafter "Taff") which included the amount of $1,199,326.29. After judgment was entered herein, Nelson settled the bankruptcy court's judgment against him by paying the trustee $16,000 and giving up a claim valued at approximately $700. I conclude that the disparity between Nelson's stipulated damages, especially as trebled, and Nelson's actual damages presents an "extraordinary circumstance" entitling Taff to relief from the judgment under sec. 806.07(1)(h), Stats.[1]

Section 806.07, Stats., attempts to achieve a balance between the competing values of finality and fairness in the resolution of a dispute. *State ex rel. M.L.B. v. D.G.H.*, 122 Wis. 2d 536, 542, 363 N.W.2d 419, 422 (1985). For assistance in interpreting sec. 806.07(1)(h), Stats., we may refer to Wisconsin cases interpreting the Wisconsin rule and federal cases interpreting Federal Rule of Civil Procedure 60(b)(6), the analogous federal rule.

The United States Supreme Court has construed Rule 60(b)(6) as requiring a showing of "extraordinary

---

[1] Section 806.07(1)(h) provides:

> (1) On motion and upon such terms as are just, the court may relieve a party . . . from a judgment, order or stipulation for the following reasons:
>
> . . ..
>
> (h) Any other reasons justifying relief from the operation of the judgment.

circumstances" before relief may be granted. *Klapprott v. United States*, 335 U.S. 601, *modified*, 336 U.S. 942 (1949); *Ackermann v. United States*, 340 U.S. 193 (1950). The Wisconsin Supreme Court has adopted that test. *M.L.B.*, 122 Wis. 2d at 549, 363 N.W.2d at 425.

In *Ennis v. Ennis*, 88 Wis. 2d 82, 91, 276 N.W.2d 341, 344 (Ct. App. 1979) (citing *Klapprott*, 335 U.S. at 615), we concurred with the federal interpretation that sec. 806.07(1)(h), Stats., "must be liberally construed to allow relief from judgments 'whenever such action is appropriate to accomplish justice.' " *Ennis* is supported by *In re Smith*, 82 Wis. 2d 667, 264 N.W.2d 239 (1978), and followed in *Conrad v. Conrad*, 92 Wis. 2d 407, 284 N.W.2d 674 (1979). In *Smith*, the court sustained the exercise of the trial court's discretion under sec. 806.07(1)(h) to reopen a judgment entered in the course of a probate proceeding to correct what the trial court considered to have been an erroneous disposition of property. In *Conrad*, the court sustained the use of sec. 806.07(1)(h) to reopen a divorce judgment to reconsider the property division where the wife did not specifically agree to an oral division of the property and immediately objected to a written order allegedly based on an oral agreement. Thus, the Wisconsin Supreme Court has approved the use of sec. 806.07(1)(h) to grant relief from a judgment where, because of changed circumstances, the interests of justice so require.

This is consistent with the federal courts' interpretation of Rule 60(b)(6). In *Kirby Forest Indus., Inc. v. United States*, 467 U.S. 1, 17-19 (1984), the Court held that the rule could be used to correct the value of condemned land because of a change in value between the determination of the condemnation commission in 1979, and the date of the taking in 1982.

In this case, it cannot be denied that there was an extraordinary change in Nelson's circumstances. At the time of trial, judgment had been entered against him by the federal bankruptcy court in the amount of almost $400,000. The trial court correctly ruled that damages are to be determined at the time of entry of judgment. But, as we have seen, where extraordinary circumstances intervene, the trial court may reopen a judgment to reflect the changed circumstances. In this case, I conclude that the disparity between the damages awarded Nelson because of his assumed liability on the bankruptcy court's judgment, especially as trebled, and his actual damages is so great that the trial court erroneously exercised its discretion when it denied Taff's motion to reopen the judgment to redetermine Nelson's damages. Because of the trebling of Nelson's damages, he has received a windfall almost beyond belief.[2]

The jury found that Nelson's "other damages" were $105,000. This amount was also trebled. In addition, Nelson received an award for his attorney fees and expenses of litigation, in the amount of approximately $22,000. Further, I consider it significant that the jury

---

[2] The concurrence asserts that if Taff obtains relief from the judgment, he will get a "windfall." This assertion begs the question. In this sense, any defendant who obtains relief from a judgment gets a "windfall." But that is exactly the purpose of sec. 806.07, Stats.—to grant relief (read "windfall") whenever equitable considerations so dictate. However, it is not the purpose of RICO or WOCCA to allow the trebling of nonexistent damages. Nelson was never damaged in the amount of $399,775.43 as adjudged by the bankruptcy court; he was damaged in the amount of $16,700. Let the trial court exercise its discretion to treble that figure and the "other damages" of $105,000 found by the jury; Nelson ends up with $365,100 which is surely enough to satisfy the purposes of RICO and WOCCA, and, perhaps, to bankrupt Taff.

did not find that Nelson was entitled to punitive damages. If there ever was a case in which the sanctity of the final judgment is outweighed by "the incessant command of the court's conscience that justice be done in light of *all* the facts," *M.L.B.*, 122 Wis. 2d at 550, 363 N.W.2d at 426 (quoting *Bankers Mortgage Co. v. United States*, 423 F.2d 73, 77 (5th Cir.), *cert. denied*, 399 U.S. 927 (1970) (emphasis in original)), this is that case.