In re **MIDWAY PARTNERS**, Debtor.

**RESOLUTION TRUST CORPORATION,** as Receiver for Heritage Federal Savings and Loan Association, Plaintiff–Appellant,

v.

**Ocie F. MURRAY, Jr.; Eric H. Scheffey,** Defendants–Appellees.

No. 92–2325.

United States Court of Appeals, Fourth Circuit.

Argued April 1, 1993.

Decided June 1, 1993.

Garland S. Cassada, Robinson, Bradshaw & Hinson, P.A., Charlotte, NC, argued (Frank H. Lancaster, on brief), for plaintiff-appellant.

Ocie F. Murray, Jr., Singleton, Murray, Craven & Inman, Fayetteville, NC, argued, for defendant-appellee Murray.

John Carl Schafer, Brown & Bunch, Durham, NC, argued, for defendant-appellee Scheffey.

Before RUSSELL and WILLIAMS, Circuit Judges, and SPROUSE, Senior Circuit Judge.

## OPINION

DONALD RUSSELL, Circuit Judge:

This case requires us to determine the status of two claims asserted by the Resolution Trust Corporation ("RTC"), acting as receiver for Heritage Federal Savings and Loan Association ("Heritage"), against Midway Partner's ("Midway") bankruptcy estate. The RTC filed two unsecured proofs of claim with the bankruptcy court after a foreclosure sale of collateral securing two loans made by the RTC to Midway failed to satisfy the loans. The bankruptcy court denied both claims, concluding that it had previously consolidated the RTC's two claims into one secured claim and that because the value of the collateral had not diminished prior to foreclosure, no unsecured claim remained. The district court affirmed that decision. Although we conclude that the bankruptcy court was not clearly erroneous in determining the value of the collateral, we do find that the bankruptcy court erred in denying the RTC's second claim. Because we conclude that the first claim was satisfied by the foreclosure sale, we affirm the bankruptcy court's denial of that claim. With respect to the second claim, however, we conclude that the bankruptcy court erred in denying the claim because the value of the collateral was consumed by interest on the first claim, leaving the second claim unsecured. Therefore,

we reverse the bankruptcy court's denial of the RTC's second claim.

## I.

The first claim in question in this case is based on a loan made on August 29, 1986, from Heritage to Midway for $4,900,000 to finance Midway's acquisition of "The Cape," a resort real estate development. That loan was secured by a first deed of trust on The Cape. On April 27, 1987, Heritage loaned Midway an additional $400,000. That loan was secured by a second deed of trust on The Cape.

On February 12, 1988, Midway filed a Chapter 11 bankruptcy petition. The RTC thereafter properly filed two proofs of claim with the bankruptcy court.[1] The RTC's first claim was for $4,408,452.19, the amount due on the petition date on the first loan. The second claim was for $399,156.56, the amount due on the second loan.

Two years after the petition date, the bankruptcy court considered motions to deny confirmation of Midway's Chapter 11 reorganization plan, to convert the case to Chapter 7, and to lift the automatic stay in order to allow the RTC to foreclose on The Cape. At argument on these motions, the bankruptcy court stated that it was "going to find that the value's $4,815,000.00 which means that [the RTC] has a secured claim of that amount, but an unsecured claim of some other substantial amount." The court observed that the unsecured claim was the second loan. By written order dated May 3, 1990, the bankruptcy court denied confirmation of Midway's plan, ordered conversion of the case to Chapter 7, and allowed the RTC to foreclose its two liens on The Cape. The bankruptcy court also reiterated its finding that the value of The Cape was $4,815,000. The court went on to state, however, that "[f]or purposes of this opinion, the court shall

refer to both [RTC] claims as one claim secured by a first lien on the project." In addition, the bankruptcy court found, contrary to its oral conclusions, that the RTC did not have an unsecured claim, stating that "[the RTC] contends that it has an unsecured claim, but that is not supported by the facts of this case." The bankruptcy court concluded, however, that "[w]hether or not [the RTC] has an unsecured claim ... is not significant because [another creditor] has voted to reject the plan and that vote by itself denies the debtor acceptance of the unsecured class."

On November 11, 1990, the RTC filed a motion to amend the order, pursuant to Bankruptcy Rule 9024, Fed.R.Civ.Pro. 60, and 11 U.S.C. § 105(a), on the ground of a perceived error in the bankruptcy court's analysis of the RTC's liens. The RTC contended that the bankruptcy court had misstated the status of its claims in its May 3, 1990 order by treating them as one secured claim rather than as two secured claims.[2] The bankruptcy court denied that motion, concluding that "the requested change has no effect on the relief granted in the order of May 3 and the change would have no effect on the estate." In any event, the bankruptcy court was not convinced that a mistake had been made.

The RTC subsequently foreclosed its first lien on The Cape. Receiving no bids, the RTC purchased The Cape itself for $3,180,-250. The RTC bid this amount pursuant to its standard procedure of bidding 70% of the average appraised value of the collateral at foreclosure, after subtracting any liens with priority over the RTC's from that figure.

Because the foreclosure sale failed to satisfy both claims, the RTC filed two proofs of unsecured claims in the bankruptcy court, one for $1,242,474.17, the amount remaining on the first loan, and another for $399,156.56, the amount remaining on the second loan.

---

1. The United States Office of Thrift Supervision appointed the Resolution Trust Corporation to act as receiver for Heritage Federal Savings & Loan Association.

2. The significance of this distinction is that if the RTC held one secured claim, interest on that claim could only accumulate up to the value of the collateral. With two separate claims, the

RTC could accumulate sufficient interest on the first claim to consume the entire value in the collateral, thereby leaving the second claim unsecured. The RTC could then attempt to recover the funds due on the second claim from the guarantors on the loan, including Eric H. Scheffey, one of the appellees.

The bankruptcy trustee objected to both claims, however, on the ground that the bankruptcy court had already determined the value of the property to be $4,815,000, and asserted that that amount fully secured both of the RTC's claims.

At the hearing on the trustee's objections to the claims, the RTC introduced evidence that The Cape's value as an on-going development was approximately $3,000,000. The RTC's witness also concluded that the retail fair market value of The Cape was between $800,000 and $1,000,000. Relying on the original valuation of The Cape, however, the bankruptcy court ruled in its February 11, 1992 order that it was "not persuaded that the value of the property was less than $4,815,000.00 at the time of foreclosure," and allowed the trustee's objections.

The RTC appealed from this order to the district court, which affirmed the bankruptcy court. The district court, after considering all of the evidence, concluded that the bankruptcy court had consolidated the RTC's two liens in its May 3, 1990 order, and because the RTC had not appealed that decision, the district court was foreclosed from considering the issue. The district court also found that "pursuant to 11 U.S.C. § 506(a), the disposition of the collateral and the purpose of the valuation in [the bankruptcy court's orders] were sufficiently alike to permit the bankruptcy court to rely on [the May 3, 1990 order's] valuation when reaching its decision." The RTC now appeals.

## II.

At the outset, the Appellees argue that because the RTC failed to appeal from the bankruptcy court's denial of the RTC's motion to amend the May 3, 1990 order, the RTC waived its right to contest the bankruptcy court's "consolidation" of its two liens.

In light of the bankruptcy court's decision itself, however, we reject the Appellees' argument.

Our reading of the bankruptcy court's May 3, 1990 order leads us to conclude that the statements concerning the status of the RTC's liens in that order, upon which the Appellees rely in arguing waiver, are dicta. A reading of the order itself leads us to this conclusion. On its face, the order limits its application to its own terms: "[f]or purposes of this opinion, the court shall refer to both [RTC] claims as one claim secured by a first lien on the project." In addition, the court recognized that its statements neither factored into its decision[3] nor had any effect on the relief granted in the order.[4] Because neither statement relied upon by the Appellees was relevant to the bankruptcy court's resolution of the issues before it, the RTC did not waive any right to appeal it may have had.[5] Accordingly, we conclude that the bankruptcy court did not "consolidate" the RTC's two liens, and we may proceed to review the bankruptcy court's denial of the RTC's two unsecured claims.

## III.

The first step in determining the status of the RTC's two claims requires us to decide whether the bankruptcy court erred in making its valuation of The Cape after foreclosure. We review that finding of fact for clear error, and review any related legal determinations de novo. In re Johnson, 960 F.2d 396, 399 (4th Cir.1992). Although the RTC argues that the bankruptcy court blindly adopted its May 3, 1990 valuation in the February 11, 1992 Order, it appears that the bankruptcy court did consider all available evidence of value. In light of that evidence, we conclude, as did the district court, that the bankruptcy court was not clearly errone-

---

3. The court stated in that order that "[w]hether or not [the RTC] has an unsecured claim ... is not significant because [another creditor] has voted to reject the plan and that vote by itself denies the debtor acceptance of the unsecured class."

4. The court recognized this fact in its order denying the RTC's motion to amend the May 3, 1990 order when it stated that "the requested change

has no effect on the relief granted in the order of May 3 and the change would have no effect on the estate."

5. This Court reviews judgments, not opinions. It would be absurd to require a party to appeal from language in an opinion when they received their requested relief (here, relief from the automatic stay to foreclose on The Cape) and the language in question is dicta.

ous in finding the value of The Cape at the time of foreclosure to be $4,815,000.

■■■ Our starting point in reviewing the bankruptcy court's valuation ruling is, of course, the Bankruptcy Code. Under section 506(a), the value of property securing a secured creditor's claim "shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property." 11 U.S.C. § 506(a). As this Court has observed, "estimates of value made during bankruptcy proceedings are 'binding only for the purposes of the specific hearing and ... [do] not have a *res judicata* effect' on subsequent hearings." *In re Snowshoe Co.*, 789 F.2d 1085, 1088–89 (4th Cir.1986) (quoting S.Rep. No. 95–989, 95th Cong., 2d Sess. 54, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5840). In addition, the courts have recognized the fact that the value of collateral may change between the time a claim is allowed and the time of a foreclosure sale. *Dewsnup v. Timm*, — U.S. —, —, 112 S.Ct. 773, 778, 116 L.Ed.2d 903 (1992); *In re Briggs Transport Co.*, 780 F.2d 1339, 1349 (8th Cir. 1985). Accordingly, a bankruptcy court faced with the need to re-value collateral should not "mechanically appl[y] the valuation determination in the earlier proceeding," but should make an independent evaluation of the value of the collateral. *In re Snowshoe Co.*, 789 F.2d at 1089.

In this case, the bankruptcy court heard argument on whether the value of The Cape had diminished since the initial $4,815,000 valuation. At that hearing the RTC presented evidence that suggested that the value of The Cape had decreased due to changes in the manner of federal wetlands regulation enforcement. The RTC also introduced appraisal testimony to demonstrate that the $4,815,000 value was excessive. In response, the Trustee urged the court to rely on the evidence presented to establish the original $4,815,000 value, and contended that in the four months between the initial valuation and foreclosure, The Cape had not diminished in value. After reviewing the available evidence, the bankruptcy court concluded that

"it was not persuaded that the value of the property was less than $4,815,000 at the time of foreclosure." As the court observed, even the RTC's representative testified that "the RTC took a very conservative approach in establishing its foreclosure bid."

The bankruptcy court properly considered the RTC's new appraisals along with the earlier appraisals of The Cape, as those appraisals were made only four months before foreclosure. In addition, the RTC's contention that changes in federal wetlands regulation enforcement had diminished The Cape's value was not supported by specific evidence as to when that purported change took place. A reading of this record leads us to conclude that the bankruptcy court was not clearly erroneous in finding that The Cape's value had not diminished in the period between its initial valuation and foreclosure. We now must determine the status of each of the RTC's claims.

■■■ At the outset of this bankruptcy proceeding, the RTC filed two proofs of claim asserting two secured liens. Because no objection was made to these claims, they were deemed allowed pursuant to 11 U.S.C. § 502(a). Under the Bankruptcy Code, a creditor that has an allowed claim on collateral with a value *less* than the amount owed on that claim holds two claims: a secured claim equal to the value of the collateral, and an unsecured claim for the excess of the claim over the value of the collateral. 11 U.S.C. § 506(a); *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 239, 109 S.Ct. 1026, 1029, 103 L.Ed.2d 290 (1989). Under section 506(b), a creditor with an allowed secured claim is entitled to recover interest up to, but not exceeding, the value of the collateral securing the allowed claim. 11 U.S.C. § 506(b);[6] *United Savings Assoc. v. Timbers*, 484 U.S. 365, 372–73, 108 S.Ct. 626, 631, 98 L.Ed.2d 740 (1988).

At the hearing on its motion to lift the automatic stay (the hearing that led to the May 3, 1990 order), the RTC attempted to introduce evidence that the amount of principal and interest on the first lien exceeded the

---

**6.** Section 506(b) provides: "To the extent that an allowed secured claim is secured by property the value of which ... is greater than the amount of such claim, there shall be allowed to the holder of the claim, interest on such claim." 11 U.S.C. § 506(b).

value of The Cape at that time.[7] The RTC later submitted a summary of indebtedness as of the date of the foreclosure sale of The Cape to the bankruptcy court, which indicated the following amounts due:

FIRST LOAN:

| | |
|---|---|
| Principal Due | $3,928,424.12 |
| Interest | $1,714,157.06 |
| TOTAL DUE BEFORE SALE | $5,642,581.18 |

SECOND LOAN:

| | |
|---|---|
| Principal Due | $ 372,000.00 |
| Interest | $ 148,717.48 |
| TOTAL DUE | $ 520,717.48 |

Because the amount due on the first loan exceeded the value of The Cape originally found by the bankruptcy court, and the amount received on foreclosure failed to satisfy the first loan, the RTC submitted two proofs of unsecured claims for the remaining amounts due on the two claims.[8]

The RTC's argument with respect to the status of its first claim relies upon its assertion that the bankruptcy court was clearly erroneous in valuing The Cape. Because we conclude that the RTC's first loan did accrue sufficient interest to consume the value of the collateral, we find that the RTC's first claim was satisfied by the foreclosure sale. The RTC argues with respect to its second claim, however, that because the first claim had accumulated sufficient interest to consume the value of the collateral by the time of foreclosure, the second claim was left unsecured. We agree with the RTC as to the status of the second claim, and accordingly find the bankruptcy court in error.

It is clear from the evidence presented to the bankruptcy court that the amount due on the first loan, including principal and accumulated interest, entirely consumed The Cape's value at the time of the initial valuation. The bankruptcy court observed as much at that hearing when it stated that it was "going to find that the value's $4,815,-000.00 which means that [the RTC] has a secured claim of that amount, but an unsecured claim of some other substantial amount," the unsecured claim being the second loan. Indeed, the Appellees conceded this fact at oral argument. Because the RTC had only a secured claim under section 506(a), the foreclosure sale of the collateral satisfied that secured claim. Thus, we find that the RTC is not entitled to an unsecured claim for any remaining unpaid portion. Therefore, the bankruptcy court did not err in denying the RTC's unsecured claim for the balance due on the first loan.

With respect to the RTC's second loan, the bankruptcy court did err in denying their unsecured claim for those funds. Because we have concluded that the amount due on the first loan entirely consumed the collateral securing both loans, we must necessarily conclude that the second loan was completely unsecured at the time the bankruptcy court made its initial valuation of The Cape. Section 506(a) provides that an allowed claim is an unsecured claim "to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim." 11 U.S.C. § 506(a). Thus, because the value remaining in the collateral to secure the second loan was zero, the second loan was entirely unsecured. We therefore conclude that the bankruptcy court erred in denying the RTC's unsecured claim for the amount due on the second loan.

IV.

Our conclusion that the bankruptcy court was not clearly erroneous in finding The Cape's value at foreclosure to be $4,815,000 requires us to affirm the bankruptcy court's denial of the RTC's unsecured claim for the balance due on the first loan and leads us to reverse the bankruptcy court's denial of the RTC's claim for the balance due on the second loan. Accordingly, the decision of the

---

7. The RTC asserted that the total indebtedness on the first lien totalled $5,470,484.22, composed of $3,928,424.12 in unpaid principal and $1,542,-060.10 in unpaid interest.

8. The RTC submitted a claim for $1,242,474.17 on the first lien and a claim for $399,156.56 on the second lien.

district court affirming the bankruptcy court is affirmed in part and reversed in part.[9]

*AFFIRMED IN PART AND RE-VERSED IN PART.*

---

**9.** The RTC filed a motion to supplement the record on February 4, 1993. We have carefully examined the material sought to be added to the record and find nothing in such material that would add anything of substance to the decision in this case. For this reason, the motion is denied.