In the Matter of Oliver PLUNKETT,
Monica Plunkett, Debtors.

Bankruptcy No. 82–21119–CNC.

United States Bankruptcy Court,
E.D. Wisconsin.

July 11, 1995.

Mark L. Metz of Reinhart, Boerner, Van Deuren, Norris & Rieselbach, Milwaukee, WI, for Ralph C. Anzivino, Trustee.

Kevin J. Sjostrom of Sjostrom & Assocs., Brookfield, WI, for Emerald Builders, Inc.

## MEMORANDUM DECISION

C.N. CLEVERT, Chief Judge.

This contested matter is before the court on the Chapter 11 trustee's objection to the amended proof of claim and the "Motion to Allow Informal Proof of Claim and Amendment to Proof of Claim and In the Alternative to Enlarge Time to File Proof of Claim" (motion) filed by Emerald Builders, Inc.

## I. FINDINGS OF FACT [1]

1. Emerald Builders, Inc. (Emerald) is a Wisconsin corporation whose stock is owned 50% by William B. Bayliss and 50% by Rudolph Umbs. It was formed by Bayliss and Umbs in 1961 to build, own and manage various real estate projects, including certain residential rental property located at 2424–34 West Wells Street in Milwaukee, Wisconsin (the property).

2. On October 19, 1966, Emerald gave the Wauwatosa Savings & Loan Association (WSLA) a mortgage on the property to secure payment under a note that was personally guaranteed by Bayliss and Umbs.

3. In 1974, Emerald sold the property to Robert Bello on a land contract and Bello assumed the WSLA mortgage. Emerald remained liable on the WSLA Note and mortgage, and Bayliss and Umbs remained liable on their personal guaranties.

4. On May 30, 1975, Bello assigned his land contract vendee interest in the property to Oliver Plunkett (Plunkett or debtor).

5. When Bello assigned his land contract vendee interest in the property to Plunkett, Plunkett also assumed the WSLA Note and mortgage and thereafter remained liable thereon. Emerald remained liable on the WSLA Note and mortgage, and Bayliss and Umbs remained liable on their personal guaranties.

6. When Bello assigned his interest in the property to Plunkett, the outstanding indebtedness was approximately $950,000. Approximately $650,000 was owed on the WSLA Note and mortgage, and approximately $300,000 was owed to Emerald on the land contract.

7. In early 1982, Plunkett defaulted on his payments and on April 8, 1982, WSLA commenced a foreclosure action against Plunkett and Emerald in the Milwaukee County Circuit Court.

---

1. Although the parties have stipulated to many of the pertinent facts, the court has made additional independent findings, all of which comprise the Findings of Fact herein.

8. On April 15, 1982, Oliver and Monica Plunkett filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code (the Code) and Thomas Korb was appointed interim trustee.

9. Emerald sent a letter dated May 7, 1982, to the court and Korb (the May 7 letter), advising them of Emerald's interest in the property under the land contract and the amount due Emerald.[2]

10. The letter, which contained an offer by Emerald to manage the property, was not entered by the clerk on either the case docket or the claims docket.[3]

11. At that time the property was encumbered by liens totaling $810,000, of which $510,000 was owed to WSLA, and $300,000 was owed to Emerald.

12. Although Plunkett's original schedules did not list Emerald as a creditor, supplemental schedule A–2 filed May 13, 1982, listed Emerald as having a contingent, secured claim in the amount of $299,528.49.

13. Emerald never inquired and was never notified of how its debt had been scheduled by Plunkett.

14. Also, Emerald did not receive notice of the § 341 hearing held the day after it was listed as a creditor.

15. In a letter to Korb dated May 24, 1982, either Emerald or Bayliss offered to purchase the property for $880,000, a figure arrived at by computing the approximate amount owed under the land contract, including amounts owed to WSLA. Bayliss and Umbs, subject to suit on their personal guarantee of Emerald's debt on the property, were distraught over the management of the property and feared substantial damage to the building and a resulting loss of value. The trustee did not respond to the offer.

16. On May 27, 1982, Professor Ralph C. Anzivino accepted appointment as Chapter 11 trustee.

17. Although Anzivino did not recall seeing the May 7 letter until Emerald filed the instant motion, a copy was in the files transferred from Korb.

18. WSLA and Emerald instituted an adversary proceeding on June 11, 1982, seeking to modify the automatic stay to allow WSLA's pending state court foreclosure action to proceed.

19. At the time of the lift stay proceeding, approximately $840,000 was due and owing to WSLA and Emerald. WSLA's expert testified that the property was worth approximately $840,000 and the trustee's expert testified that the property was worth approximately $950,000.

20. At a hearing on August 5, 1982, the court determined that there was equity in the property, and that the property was worth at least $870,000. The court therefore denied the request for a modification of the automatic stay and the trustee was instructed to make monthly adequate protection payments of $4,901.54 to WSLA and $2,720.06 to Emerald. Neither Emerald nor WSLA appealed from this order.

21. The trustee made the required payments for approximately one year, until he abandoned the property, with notice to Emerald, effective August 31, 1983.

22. An order denying the debtor's discharge was entered on July 8, 1983. Thereafter, on September 13, 1983, the court formally terminated the automatic stay, allowing the state court foreclosure action to proceed. WSLA took judgment in that foreclosure action on November 17, 1983.

23. Bayliss and Umbs obtained the property at the foreclosure sale, subject to back taxes of approximately $60,000, with a personal bid of $535,000.

24. In an order dated April 9, 1984, the Milwaukee County Circuit Court confirmed the sale to Bayliss and Umbs, noting that $532,069.75 was to be paid to WSLA on

---

2. The stipulation filed by the parties states that the May 7 letter was dated "May 7, 1987." However, in light of the date actually printed on the letter, the representations of the parties and the rest of the record, the court attributes the 1987 date to a misprint and will proceed using May 7, 1982, as the relevant date.

3. The letter was date stamped "Received: May 10, 1982" by the Clerk of the bankruptcy court.

account of its first mortgage, with the excess amount ($2,930.25) to be applied to Plunkett's debt to Emerald under the land contract. This left an unsatisfied balance due to Emerald of approximately $300,000. There were no objections to the confirmation of the sale and no appeal was taken.

25. Emerald did not seek a deficiency judgment in the state court foreclosure proceeding or relief from the judgment of foreclosure and order of confirmation.

26. The purchase extinguished Bayliss and Umbs' personal guarantee on the WSLA Note and allowed them to take advantage of certain tax benefits.

27. Bayliss and Umbs borrowed the funds for the purchase from Emerald, which in turn, borrowed funds to make the loan.

28. Bayliss and Umbs paid the back taxes on the property and sold the property to an unknown third party in August, 1987, for $600,000.

29. After the court's order terminating the automatic stay was entered in September, 1983, neither Emerald, Bayliss nor Umbs contacted the Bankruptcy Court or the trustee until December, 1992.

30. On December 5, 1986, Emerald moved from its office at 9431 West Beloit Road, Milwaukee, Wisconsin, to an office in Mr. Bayliss' home at 3344 South 95th Street, and there is no evidence that the Bankruptcy Court or the trustee was notified of the address change.

31. Emerald's change of address notice expired December 5, 1987, at which time the U.S. Postal Service ceased automatically forwarding first class mail.

32. On December 22, 1987, the court entered an order pursuant to Fed.R.Bankr.P. 3003(c)(3) setting January 22, 1988, as the last date for filing claims against the debtors (the Bar Date).

33. Pursuant to Rule 3003(c)(2), all creditors in the bankruptcy case were required to file a proof of claim on or before the Bar Date, unless such claim was scheduled and identified as undisputed, noncontingent or liquidated.

34. On or about December 28, 1987, the trustee mailed a Notice of the Bar Date to all known creditors, with certain limited exceptions, and to Emerald at 9431 W. Beloit Road, Milwaukee, Wisconsin.

35. The trustee's assistant, Patricia Purtell, executed a certificate of service, by first-class mail, which was filed in January, 1993.

36. The trustee's records do not show that he received any returned mail from Emerald after mailing the Notice of Bar Date.

37. Neither Bayliss nor any representative of Emerald actually received the mailed Notice of Bar Date.

38. Pursuant to an order of this court, the trustee also published the Notice of Bar Date for three consecutive days on December 28, 29 and 30, 1987, in the *Milwaukee Sentinel* and in the *Wall Street Journal,* as notice to "Missing Creditors" and as a supplement to the mailed notices.

39. On December 26, 1987, Bayliss and his wife left Milwaukee for Florida and did not see either the *Milwaukee Sentinel* or the *Wall Street Journal* on the dates the Notice of Bar Date was published.

40. Emerald did not file a formal proof of claim by the Bar Date.

41. Emerald believed that the May 7, letter notified the court of its claim and that the letter protected its interest in the bankruptcy case.

42. On December 15, 1992, the trustee filed a Second Amended Joint Plan of Distribution (the Plan) and disclosure statement with the court, which Plan was confirmed on January 21, 1993. The Plan provides for payments to unsecured creditors, that the trustee estimates will approach 40–50% of allowed general unsecured claims, based on assumptions concerning the net proceeds the estate will realize from the sale of certain real estate in the Virgin Islands.

43. After reading about the Plan and potential distribution to creditors in the December 5, 1992, *Milwaukee Business Journal,* Bayliss contacted the trustee's attorneys on December 7, 1992. Bayliss was told that Emerald was not considered to be a creditor entitled to a distribution under the Plan.

Thereafter, Bayliss retained counsel and filed a document designated "Amended Proof of Claim" on January 3, 1993, purporting to amend and set forth with greater particularity Emerald's informal claim in the May 7 letter. Additionally, on January 8, 1993, Emerald filed the motion to allow its claim.

44. Emerald's "Amended Proof of Claim" asserts an unsecured debt in the amount of $362,590.99, consisting of a $301,077.41 deficiency from the 1984 foreclosure sale plus real estate taxes of $61,513.58 paid by Bayliss and Umbs.

45. If the Amended Proof of Claim is allowed in full, other unsecured creditors will receive approximately $.03 to $.04 less on each dollar of their allowed claims, thereby diluting the distribution to unsecured creditors by approximately 6–10%.

## II. CONCLUSIONS OF LAW

The primary legal issues are: Is Emerald's May 7 letter an informal proof of claim? If so, may it now be amended? If not, does excusable neglect warrant an extension of time for Emerald to file a late claim? And lastly, what is the allowable amount of Emerald's claim?

### A. *Emerald's May 7 Letter as an Informal Proof of Claim*

■ A failure to comply with the claim filing requirements of Fed.R.Bankr.P. 3001 and 3003(c) is not necessarily the death knell for a misguided or inattentive creditor. The bankruptcy court may allow a Chapter 11 claim in the exercise of its broad equitable power to balance the interests of affected parties and the overriding goal of effective reorganization, when a disallowance of the claim will produce an unfair result through no fault of the creditor. *Wilkens v. Simon Brothers, Inc.,* 731 F.2d 462, 464 (7th Cir. 1984). Allowance of such a claim, upon the

manifestation of an intent to hold the estate liable on the debt, has come to be known as an informal proof of claim.

■ As the case law surrounding allowance of informal proofs of claim has unfolded, five prerequisites have emerged. The claim must be in writing; there must be a demand by the creditor on the estate; it must evidence an intent to hold the debtor liable; the claim must be filed with the bankruptcy court; and allowance of the claim must be equitable under the facts of the case. *See Charter Co. v. Dioxin Claimants (In re Charter Co.),* 876 F.2d 861 (11th Cir.1989); *Anderson–Walker Indus. v. Lafayette Metals, Inc. (In re Anderson–Walker Indus.),* 798 F.2d 1285 (9th Cir.1986); *Sambo's Restaurants, Inc. v. Wheeler (In re Sambo's Restaurants, Inc.),* 754 F.2d 811 (9th Cir. 1985); *In re Ellington,* 151 B.R. 90 (Bankr. W.D.Tex.1993); *In re Sorge,* 149 B.R. 197 (Bankr.W.D.Okla.1993); *In re Bowers,* 104 B.R. 362 (Bankr.D.Colo.1989); *In re McCoy Mgt. Servs., Inc.,* 44 B.R. 215 (Bankr. W.D.Ky.1984); Fed.R.Bankr.P. 3001. The factual setting of a particular case dictates whether the requisite intent to hold the estate liable has been manifested. *Wilkens,* 731 F.2d at 465.

■ In the case at bar, the court is satisfied that Emerald's May 7 letter constitutes an informal proof of claim. Not only does the letter meet the five cited requirements,[4] but Emerald's intent to hold the estate liable on the land contract was demonstrated when it joined WSLA in seeking relief from the automatic stay to foreclose on Plunkett's Wells Street property. *See Pizza of Hawaii, Inc. v. Shakey's, Inc. (In re Pizza of Hawaii, Inc.),* 761 F.2d 1374 (9th Cir.1985) (holding that a creditor's participation in the bankruptcy proceedings, including seeking relief

---

4. The full text of the May 7, 1982, letter reads as follows:

> Dear Attorney Korb,
> The intent of this letter is to put the Federal Bankruptcy Court on notice that we have a vested interest in the above property which we sold to Mr. Oliver Plunkett in 1975 on a land contract.
> There is an approximate balance due of $810,-000.00 on this property as of this date. $510,-000.00 is due to Wauwatosa Savings & Loan Association and $300,000.00 is due to us.
> We would like to advise the court that we are available to manage the above property with rentals and disbursement of the bills.
> At present, we have a rental office at 9431 W. Beloit Road, Suite 206 and manage several office and apartment buildings in the area.
> Respectfully,
> s/ William Bayliss

from the automatic stay to pursue a state court action, in conjunction with filing documents with the bankruptcy court, constituted an informal proof of claim).

### B. *May Emerald's Informal Proof of Claim be Amended?*

 Whether or not to allow a creditor to amend its proof of claim is a matter squarely within the discretion of the bankruptcy court. *In re Stavriotis*, 977 F.2d 1202 (7th Cir.1992); *In re Unroe*, 937 F.2d 346 (7th Cir.1991). However, in order for a creditor to cure a defect in the claim as originally filed, describe the claim with greater particularity or plead a new theory of recovery on the facts set forth in the original proof of claim, *Biscayne 21 Condo., Inc. v. South Atlantic Fin. Corp. (In re South Atlantic Fin. Corp.)*, 767 F.2d 814 (11th Cir.1985), *cert. denied*, 475 U.S. 1015, 106 S.Ct. 1197, 89 L.Ed.2d 311 (1986); *Tri State Homes, Inc. v. Mears (In re Tri State Homes, Inc.)*, 56 B.R. 24 (Bankr.W.D.Wis.1985), the creditor must have some right to the amounts sought to be recovered. 11 U.S.C. § 101(5). Absent some right to payment, there can be no "claim" within the purview of the Bankruptcy Code and, hence, no recovery, either by way of an informal proof of claim, an amended proof of claim, or otherwise. Whether a right to payment exists is determined by reference to state law, which creates enforceable rights and substantive obligations. The bankruptcy court may not award to a creditor that which a state court would withhold. *Grogan v. Garner*, 498 U.S. 279 at n. 9, 111 S.Ct. 654, 658 n. 9, 112 L.Ed.2d 755 (1991) (defining "state law" as referring to all non-bankruptcy law creating substantive rights); *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979); *Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 161, 67 S.Ct. 237, 239, 91 L.Ed. 162 (1946); *In re Udell*, 18 F.3d 403 (7th Cir.1994); *In re Chicago, Milwaukee, St. Paul & Pacific Rwy. Co.*, 791 F.2d 524, 532 (7th Cir.1986).

 Clearly then, unless Wisconsin law affords Emerald the right to recover its post-foreclosure deficiency, there is no right to payment, no "claim" for bankruptcy purposes and Emerald is precluded from amending its informal proof of claim.

Wis.Stat. § 846.04 provides for the recovery of a deficiency judgment when the proceeds from a sheriff's sale do not extinguish a mortgage debt. The judgment creditor may demand judgment for any resulting deficiency, which the court may order in the judgment of foreclosure but separately rendered after the sale is confirmed. *Id.* The "summons, complaint and all the proceedings in the action" may be amended at any time between the entry of the judgment of foreclosure and the sheriff's sale to add "proper or necessary" parties. Wis.Stat. § 846.09. Additionally, after such amendment, the judgment of foreclosure may be amended to provide for recovery of a deficiency. *Id.* If the court is satisfied that the sale of the mortgaged premises brought its fair value, the sale may be confirmed and judgment for the deficiency entered. Wis.Stat. § 846.165(2). *See also Anchor Sav. & Loan Ass'n v. Coyle*, 148 Wis.2d 94, 102, 435 N.W.2d 727 (1989) (stating that actual entry of a deficiency judgment is clerical and ministerial where the complaint in a foreclosure action demands a deficiency).

There are several mechanisms by which a litigant may obtain relief from a judgment. Wis.Stat. § 805.17(3) allows a party 20 days after the entry of judgment to bring a motion for reconsideration, seeking amendment of the court's findings and judgment. An aggrieved party also has a "reasonable time" after judgment to move for relief from the judgment or order, unless the motion is based upon mistake, inadvertence, surprise, excusable neglect, fraud, misrepresentation or misconduct of a party, in which case the motion must be made before the expiration of one year. Wis.Stat. § 806.07(2).

 In the present case, Emerald failed to seek a deficiency judgment in the first instance. Although Emerald was named as a co-defendant with Plunkett in the foreclosure action, it could have cross-claimed against Plunkett for any ensuing deficiency, by virtue of Wis.Stat. §§ 802.01(1) and 802.07(3), which allow co-parties to cross-claim against each other when the claim arises out of the same transaction or occurrence or relates to

property involved in the main action. Emerald's failure to properly cross-claim against Plunkett for the deficiency, therefore deprived the state court of jurisdiction to enter the deficiency judgment thereafter. *See Godfrey v. Wright,* 151 Wis. 372, 373–74, 139 N.W. 193 (Wis.1912):

> No foundation was laid for a judgment for deficiency ... in favor of [the] codefendant. No such judgment was ordered in the original decree. That was a necessary precedent. [W]here a defendant seeks affirmative relief against a codefendant, an answer in the nature of a cross-complaint must be served on the party against whom relief is asked. Without such service the court does not obtain jurisdiction of the person for granting such relief nor of the subject in respect thereto. Though the court may have jurisdiction in the sense of power as to such subjects, it is as necessary to give notice to the codefendant, in the manner provided ... that relief will be asked for, as for plaintiff to give notice to the principal defendant in order to render the court competent to give judgment against him in the former's favor.

Hence, Emerald's rights vis-a-vis WSLA, Plunkett, the underlying obligation and the mortgaged property were fixed on November 17, 1983, at the time the judgment of foreclosure and sale was entered. *Shuput v. Lauer,* 109 Wis.2d 164, 171–172, 325 N.W.2d 321 (1982). The subsequent hearing to confirm the sheriff's sale was a proceeding separate and distinct from the judgment of foreclosure and sale, serving to effectuate and enforce the judgment of foreclosure and sale, and finalize the interests of the purchasers. It may be "more logically characterized as an execution of judgment." *Id.* at 172, 325 N.W.2d 321. Therefore, by failing to assert any claim for a deficiency prior to the order confirming the sheriff's sale, any "right" Emerald may have had to such deficiency effectively evaporated.

■ Assuming for the purposes of argument, however, that the Milwaukee County Circuit Court could have subsequently amended its judgment to provide Emerald with a deficiency judgment, Emerald failed to move for reconsideration within 20 days from either November 17, 1983, the date of the judgment of foreclosure and sale, or April 9, 1984, the date of the order confirming the sheriff's sale. Wis.Stat. § 805.17(3). In addition, not only had Emerald failed, for nine years, to seek relief from the confirmation order under Wis.Stat. § 806.07(2) (that is, by January, 1993, the time Emerald filed its amended proof of claim), but presently, after more than eleven years from the entry of the judgment of foreclosure and sale, and thirteen years from the time the foreclosure action was commenced, Emerald has still not sought relief from the judgment.

Consequently, even assuming the grounds on which Emerald would have sought relief from the judgment were not subject to the one year limitation contained in Wis.Stat. § 806.07(2), the amount of time that has elapsed (whether measured from the date the foreclosure action was commenced, the date of the judgment of foreclosure and sale, or the order confirming the sheriff's sale), in conjunction with the facts of the case, cannot qualify as a "reasonable time" within which to seek relief from judgment.[5] This is particularly so given that Emerald has not, and in this court's opinion would not, be able to demonstrate the existence of extraordinary circumstances warranting such relief. Rather, Emerald's present circumstances stem directly from its arguably nonchalant attitude towards recovering the $300,000 due and owing on the land contract.[6] *See State ex rel.*

---

**5.** Even if Emerald were to move the state court for relief from judgment under the "catchall" of Wis.Stat. § 806.07(1)(h), which allows relief from judgment for "any other reasons justifying relief from the operation of the judgment," Emerald would be unable to show extraordinary circumstances warranting such relief. *See Nelson v. Taff,* 175 Wis.2d 178, 188, 499 N.W.2d 685 (Ct.App.), *app. denied,* 505 N.W.2d 137 (1993) (holding that relief from judgment under the catchall should only be granted where the sancti-

ty of finality is outweighed by extraordinary circumstances commanding equitable relief); *State ex rel. M.L.B. v. D.G.H.,* 122 Wis.2d 536, 544, 363 N.W.2d 419 (1985) (same).

**6.** For example, in its Supplemental Brief at 6–7, Emerald states as follows:

> Emerald clearly did not believe it was fully secured and so informed this Court and the Trustee when it joined Wauwatosa Savings and

*Cynthia M.S. v. Michael F.C.*, 181 Wis.2d 618, 626–29, 511 N.W.2d 868 (1994) (holding that the "reasonable time" analysis is to be made on a case by case basis with regard to all the relevant facts. Although the relevant facts may vary in each case, when taken as a whole they must reveal the existence of extraordinary circumstances warranting relief in the interests of justice); *State ex rel. M.L.B. v. D.G.H.*, 122 Wis.2d 536, 544, 363 N.W.2d 419 (1985). Emerald is, therefore, precluded from recovering its deficiency under Wisconsin law. It thus has no "right to payment" of that amount and no "claim" for that amount under the Bankruptcy Code.

Moreover, when the debtor's discharge was denied in August of 1983, the stay of actions against Plunkett terminated by operation of law, pursuant to 11 U.S.C. § 362(c)(2)(C). At that time, Emerald and WSLA were free to pursue and obtain deficiency judgments against Plunkett. Therefore, any argument that recovery against Plunkett personally would have been precluded by the automatic stay must also fail. *Cf. In re Tyler*, 166 B.R. 21 (Bankr.W.D.N.Y. 1994).[7]

### C. The Allowable Amount of Emerald's Claim

Having concluded that Emerald's claim for a $300,000 deficiency has dissipated, the court now turns to the claim for back real estate taxes and interest.

### 1. Real Estate Taxes

The lien theory of mortgages, which is followed in Wisconsin, see Wis.Stat. § 708.01, provides that a mortgagee does not acquire legal title to the premises upon giving the mortgage. Rather, the mortgagee merely has a security interest in the property while the mortgagor retains legal and equitable title. *Mutual Fed. Sav. & Loan Ass'n v. Wisconsin Wire Works*, 58 Wis.2d 99, 205 N.W.2d 762 (1972); *Wisconsin Fin. Corp. v. Garlock*, 140 Wis.2d 506, 410 N.W.2d 649 (Ct.App.), *app. denied*, 141 Wis.2d 985, 416 N.W.2d 297 (1987). Upon confirmation of a foreclosure sale, which sale enables the mortgagee to apply the security to the underlying obligation, the purchaser of the property acquires title and the mortgage is extinguished. *Glover v. Marine Bank of Beaver Dam*, 117 Wis.2d 684, 345 N.W.2d 449 (1984); Wis.Stat. § 846.17. The lien of a junior mortgagee is also extinguished at this time leaving only the underlying debt, on which the junior mortgagee may proceed to judgment. Kratovil and Werner, MODERN MORTGAGE LAW AND PRACTICE § 18.04–18.04(b) (2d ed. 1981).

Generally speaking, when a mortgagor is obligated to pay the taxes on a parcel of real estate but fails to do so, the mortgagee may pay the taxes to protect his or her interest in the mortgaged property, and is entitled to reimbursement for those amounts. *See generally* 55 Am.Jur.2d Mortgages § 284 (1971). Implementing this prin-

---

Loan Association in the Adversary Proceeding in July 1982 seeking relief from the Automatic Stay, pleading that Emerald was under secured and that its claim was not adequately protected. Why did Emerald want to buy the building, why did it offer to manage it, why did it join Wauwatosa in the lift stay? Because it feared under security in a rapidly declining market ... and it feared mismanagement would exacerbate the situation.
Apparently, then, Emerald was well aware that there may have been a deficiency if the foreclosure was allowed to proceed and the property's value continued to decline. This prophecy eventually came true when Emerald was left with a large deficiency after foreclosure, yet no attempt was made to recover it.

7. In *Tyler*, the stay was unconditionally lifted to allow a state court foreclosure action to proceed. Pursuant to New York's Real Property Actions and Proceedings Law, the proceeds of a fore-

closure sale are deemed to be in full satisfaction of the mortgage debt unless a motion requesting a deficiency judgment is made within ninety days of the delivery of the foreclosure sale deed. Failing to make such a motion within the allotted time period abdicates any right to recover a deficiency.

The Bankruptcy Court for the Western District of New York held that although any entitlement to a deficiency could not have been collected by the mortgagee in state court, because of the stay of actions to collect against the debtor in his personal capacity, the appropriate course of action would have been to move for a deficiency and once the motion was granted by the state court, file a claim for that amount in the bankruptcy case. By moving for a deficiency judgment in an untimely manner, that right was forfeited under state law and no claim existed in the bankruptcy case. 166 B.R. at 25–26.

ciple are several sections of Wisconsin Statutes, which provide for the recovery of taxes paid by a mortgagee. *See* Wis.Stat. §§ 846.10(4); 846.162; 779.98; 74.77. An examination of these sections reveals that none provide a mechanism by which Emerald may recover the sums paid to the taxing authorities subsequent to the order confirming the sheriff's sale.

■ For starters, an award made pursuant to any of these sections is permissive, not mandatory. *Paschong v. Hollenbeck*, 13 Wis.2d 415 108 N.W.2d 668 (1961) (analyzing Wis.Stat. §§ 278.10(4); 278.102; 174.695 and 74.67, the respective predecessors to the abovementioned sections). Additionally, the plain language of each section is unambiguously inapplicable to Emerald. Section 846.10(4) provides that "all sums advanced by the *plaintiff* for . . . taxes" may be added to the judgment of foreclosure and sale any time after its entry (emphasis added). As Emerald was neither the plaintiff in the main foreclosure action nor a "plaintiff" in any cross-complaint, it may not take advantage of § 846.10(4). Section 846.162 allows for any surplus brought from the sheriff's sale to be distributed to any party or non-party with a lien on the property at the time of the sale. Here, the proceeds remaining after the sheriff's sale have previously been disbursed to Emerald and applied toward the balance on the land contract. Section 779.98 permits a lienor to pay past due taxes and assessments on the realty and add those amounts, with interest, to the lien. However, as Emerald's lien was extinguished when the sheriff's sale was confirmed and the taxes were paid thereafter, no lien existed to which the amounts paid could be added. Finally, § 74.77, which is almost identical in wording to § 779.98, similarly provides for the lien to be increased by the amount of taxes paid. The extinguishment of Emerald's lien prior to paying the taxes also precludes it from taking advantage of this section.

■ It is undisputed that Bayliss and Umbs purchased the property subject to the back taxes and that they subsequently paid them. A general rule of mortgages is that any claim for amounts paid for taxes exists by virtue of the existence of the mortgage and cannot be separated from it. 55 Am. Jur.2d Mortgages § 548 (1971). Once the mortgage is foreclosed, a separate action cannot be maintained for the reimbursement of the taxes paid, because liability for the taxes cannot exist independent of the mortgage, which was extinguished upon confirmation of the sheriff's sale. *Id. See also Hitchcock v. Merrick,* 18 Wis. 357, 361–62 (1864):

> As part and parcel of the mortgage, the covenant to pay taxes expires with the mortgage. It is no more capable of separation from the mortgage than the mortgage from the debt. It ceases with the debt for the better protection of which it was made, and can perform no office after the debt has been paid. Now if this is true where the mortgagor voluntarily pays the debt, we think the same must be true where the mortgagee extinguishes the debt by buying in the mortgaged premises at the foreclosure sale. In either case the debt is satisfied, and the lien of the mortgage, to which the covenant [to pay taxes] is annexed, is extinguished.

In addition, because Bayliss and Umbs personally paid the back taxes and Emerald has not demonstrated it has any obligation to reimburse them, the tax claim is unenforceable.

## 2. *Interest*

■ Interest stops accruing as of the petition date and creditors will generally not be entitled to unmatured postpetition interest on their claims, 11 U.S.C. § 502(b)(2); *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 246, 109 S.Ct. 1026, 1033, 103 L.Ed.2d 290 (1989); *In re Fesco Plastics Corp.*, 996 F.2d 152, 155–56 (7th Cir.1993), except where the debtor is solvent after all distributions are made or the creditor is determined to be over secured. 11 U.S.C. § 506(b); *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs. Ltd.*, 484 U.S. 365, 372–73, 108 S.Ct. 626, 630–32, 98 L.Ed.2d 740 (1988). *See also Ridder v. Great Lakes Higher Education Corp. (In re Ridder)*, 171 B.R. 345, 347 (Bankr.W.D.Wis. 1994). However, the logical question flowing directly from this well established principle is—At what point should the status of a claim

and entitlement to postpetition interest be determined?

11 U.S.C. § 502(b) provides that, upon objection to a claim as filed, the court shall determine the amount of the claim as of the petition date. However, § 502 does not refer to a valuation of collateral or a determination of secured status; it speaks only in terms of amount.

A claim is secured "to the extent of the value of [the] creditor's interest in the estate's interest in such property." 11 U.S.C. § 506(a). In effect, section 506(a) bifurcates an otherwise under secured claim into a secured claim up to the value of the collateral and an unsecured claim for any deficiency. The value of the collateral is to be determined "in light of the *purpose of the valuation* and of the proposed disposition or use of such property...." 11 U.S.C. § 506(a) (emphasis added).

Here, although it was previously determined that Emerald was over secured for the purpose of lifting the automatic stay and providing adequate protection, such determination is not binding for purposes of confirmation or otherwise. *Resolution Trust Corp. v. Murray (In re Midway Partners)*, 995 F.2d 490, 494 (7th Cir.), *cert. denied sub nom. Scheffey v. Resolution Trust Corp.,* —— U.S. ——, 114 S.Ct. 599, 126 L.Ed.2d 564 (1993). Rather, it has been acknowledged that the value of collateral and, accordingly, secured status, is fluid and may change between the petition date and the date of foreclosure. *Id.; Dewsnup v. Timm*, 502 U.S. 410, 416–18, 112 S.Ct. 773, 778, 116 L.Ed.2d 903 (1992); *Crompton v. Boulevard Mtge. Co. (In re Crompton)*, 68 B.R. 831, 835 (Bankr. E.D.Pa.1987) (significant date for determining value of property subject to security interest is when the plan is confirmed (citing COLLIER ON BANKRUPTCY). For this reason, if and when the bankruptcy court must revalue collateral to determine secured status for confirmation, such valuation should be based upon an independent assessment, rather than blind application of an earlier valuation. *In re Midway Partners*, 995 F.2d at 494 (citing *Bray v. Shenandoah Fed. Svgs. & Loan Ass'n (In re Snowshoe Co., Inc.)*, 789 F.2d 1085, 1088–89 (4th Cir.1986)). However, once property has been foreclosed upon and sold, the sale price is the best indicator of its value and as the sale proceeds are the "reasonably equivalent value" of the property—the proper benchmark by which to determine secured status. *See BFP v. Resolution Trust Co.,* —— U.S. ——, ——, 114 S.Ct. 1757, 1765, 128 L.Ed.2d 556 (1994) (holding that property sold at a non-collusive foreclosure sale in conformity with state law is presumed to have brought the reasonably equivalent value of the property); *Ford Motor Credit Co. v. Dobbins,* 35 F.3d 860, 870–71 (4th Cir.1994) (using sale price where the price is fair and the result of an arm's length transaction) (citing cases); *Takisaki v. Alpine Group, Inc. (In re Alpine Group, Inc.)*, 151 B.R. 931, 935 (Bankr. 9th Cir.1993) (holding sale price to be conclusive evidence of collateral's value) (citing COLLIER ON BANKRUPTCY); *Schreiber v. Internal Revenue Service (In re Schreiber)*, 163 B.R. 327 (Bankr. N.D.Ill.1994) (same); *In re Bloomingdale Partners*, 160 B.R. 93 (Bankr.N.D.Ill.1993) (same).

In this case, the property was sold for $535,000 at the foreclosure sale, a price presumed to be its fair value under Wisconsin law, Wis.Stat. § 846.165,[8] and *BFP*. As Emerald was the junior lienor, it was secured for the proceeds which remained after paying off the senior lienor and unsecured for the deficiency. Emerald's current status is that of an under secured creditor and it is not, therefore, entitled to unmatured postpetition interest on its claim. *See Timbers of Inwood Forest*, 484 U.S. at 372, 108 S.Ct. at 631. However, Emerald is entitled to any interest which may have accrued on the land contract debt prior to the time Plunkett filed for bankruptcy.

---

8. Wis.Stat. § 846.15(2) states that "there shall be no presumption that such premises sold for their fair value and no sale shall be confirmed and judgment for deficiency *rendered, until the court is satisfied that the fair value of the premises sold* *has been credited* on the mortgage debt, interest and costs." (emphasis added) Therefore, once the sale was confirmed by the Milwaukee County Circuit Court, there was a presumption as to the property's fair value.

## D. *Superpriority*

In its Supplemental Brief, Emerald puts forth the additional argument that it is entitled to a superpriority under 11 U.S.C. § 507(b) for its deficiency claim. Emerald's claim is premised upon the failure of adequate protection, manifested by a dramatic decrease in the value of the property from the time adequate protection was awarded until the time of the sheriff's sale (Supp.Brief in Support of Motion at 19–20).

Section 507(b) provides that if adequate protection payments are given to a creditor whose claim is secured by a lien on property of the debtor and such adequate protection fails, the creditor has a priority claim over all other priorities listed in section 507. To qualify for this superpriority, § 507(b) states that the creditor must have a claim allowable under section 507(a)(1). Section 507(a)(1) in turn gives a priority to administrative expenses allowed under section 503(b). Turning to the text of 503(b), the only applicable subsection is 503(b)(1)(A), which allows administrative expense priorities for "actual, necessary costs and expenses of preserving the estate. . . ." The question then becomes whether or not the "cost" or "expense" incurred by Emerald by not foreclosing on the property was actual and necessary to preserve the estate.

To be an "actual and necessary" cost of preserving the estate, an expenditure must benefit the estate as a whole. *Fruehauf Corp. v. Jartran, Inc. (In re Jartran, Inc.)*, 886 F.2d 859, 871 (7th Cir.1989). In other words, there must be some net benefit to the estate or a preservation of the status quo after the costs to the creditor and the benefits to the estate are taken into account. For example, with an income producing property of the type involved in this case, the cost to Emerald of not foreclosing must be compared not only with the rents and profits collected by the estate from the property, but with all other gains and losses incurred by the estate. There must be a net gain or no net loss to the estate for the estate to have benefitted for it to have been preserved as a result of the expense incurred by the creditor. *General Am. Transp. Corp. v. Martin (In re Mid Region Petroleum, Inc.)*, 1 F.3d

1130, 1133 (10th Cir.1993) (stating that a real benefit must accrue to the estate; merely "using" the creditor's property is insufficient); *Ford Motor Credit Co.*, 35 F.3d at 867–68 (finding that any benefit accruing to the bankruptcy estate through the retention of collateral during the time an adequate protection order was in effect was merely a potential benefit and not entitled to administrative expense priority as a necessary cost of preserving the estate). Moreover, the cost or expenditure incurred by the creditor must be more than the delay and opportunity cost associated with the debtor's continued possession of the collateral, which is not the type of cost contemplated by the Code. *Ford Motor Credit Co.*, 35 F.3d at 868–869 and n. 7; *In re Ralar Distribs., Inc.*, 166 B.R. 3, 8 (Bankr.D.Mass.1994) (literally interpreting § 507(b) and stating that the section "grants [a] superpriority only 'if' the claimant has an allowable section 503(b) administrative expense claim. It does not 'convert' the claim into a section 503(b) claim."); *NL Indus., Inc. v. GHR Energy Corp.*, 940 F.2d 957, 966 (5th Cir.1991), *cert. denied*, 502 U.S. 1032, 112 S.Ct. 873, 116 L.Ed.2d 778 (1992); *In re CIS Corp.*, 142 B.R. 640, 643 (S.D.N.Y.1992) (holding that estate must accrue real benefit rather than focusing on whether creditor sustained a loss); *Kinnan & Kinnan Partnership v. Agristor Leasing*, 116 B.R. 162, 166 (D.Neb.1990) (same). *But see In Re McGill*, 78 B.R. 777 (Bankr.D.S.C.1986) (holding that affording adequate protection to creditors so debtor could maintain possession of farmland and farm equipment in a Chapter 11 case was necessary for reorganization and, therefore, entitled creditors to superpriority administrative expense status).

In this case, there is no evidence tending to show that a benefit accrued to the estate or its creditors, other than the mere potential benefits of the estate having the opportunity to market the collateral during the time adequate protection payments were being made, or collecting rents and profits from the property. Additionally, the trustee abandoned the property only one year after the adequate protection payments went into effect. Because the trustee is only allowed to abandon property of the estate which is burden-

some to the estate or of inconsequential benefit and value to the estate, 11 U.S.C. § 554, it is unlikely that a benefit was bestowed upon the estate through retention of the collateral. Emerald has, therefore, failed to carry its burden of satisfying the requirements outlined in section 507(b) and is not entitled to a superpriority. *In re Mid Region Petroleum, Inc.*, 1 F.3d at 1132.

### III. CONCLUSION

For the foregoing reasons, which constitute this court's findings of fact and conclusions of law, pursuant to Fed.R.Bankr.P. 7052, Emerald's motion to allow its May 7 letter as an informal proof of claim and to permit amendment thereof will be granted to allow it to assert a claim for prepetition unmatured interest on the land contract assumed by Plunkett. The motion will be denied in all other respects. Judgment will be entered accordingly.