Hillsborough, } No. 3308.
March 3, 1942. }

CORA MASTERS *v.* PUBLIC SERVICE CO. OF NEW HAMPSHIRE.

*McLane, Davis & Carleton (Mr. Carleton* orally), for the plaintiff.

*Demond, Sulloway, Piper & Jones* and *Warren, Wilson, McLaughlin & Wiggin (Mr. Piper* orally), for the defendant.

ALLEN, C. J.    Upon the issue of the plaintiff's contributory fault, while she was seventy-three years of age, she was in fair health and did cleaning work in business buildings.    She is chargeable with average intelligence.    Her mental and physical faculties were unimpaired except under the normal expectancy of her age.    She had many times taken the car at its first stop on Manchester Street on her way home after the work of the day.

On the occasion when she was hurt the car passed her while she was on Elm Street about fifty-two feet from the corner of Elm and Manchester Streets.    It had come to its stop as she turned into Manchester Street.    As deduced from her testimony and the exhibit of a plan the front end of the car was about forty-four feet easterly of the easterly line of Elm Street.    She walked that distance and then twelve feet more in crossing from the sidewalk to the track. At a pace of three miles an hour it took her over twelve seconds to travel the combined distance of fifty-six feet.    If, contrary to her recollection, she left the sidewalk before reaching a point opposite the front end of the car and traveled diagonally from the sidewalk

to the track part of the way, the entire distance after turning the corner of the streets was about fifty feet and about eleven seconds would be taken to cover it at the assumed pace.

While crossing the street from the sidewalk to the track there was nothing in view to indicate that the car was still waiting to receive passengers or that it was not all ready and about to start. At the stop the car discharged only one or two passengers and took on no more. While the plaintiff could not see how many left and how many boarded the car, there is no evidence that the number was less than usual, or that the car usually waited at the stop longer than it did on this occasion. If for special reasons it waited longer, none are shown to have existed at the time and the plaintiff is not shown to have expected any or to have had any reason to think there might be some. She knew that it usually started as soon as passengers waiting on the north side of Manchester Street to board it were on.

After leaving the sidewalk and while crossing the street to the track she observed the motorman standing in his position for starting the car. She did not know whether he saw her but thought that he did not. He was looking straight ahead as she observed him. She stepped on the track "about a foot" in front of the car.

She testified that she was not late and was not trying to "catch" the car. But it was her purpose to take it and on occasions when she had time, she would go "on the north side" of the street and wait.

She either sensed or did not sense the risk she took of the car starting when she undertook to cross in front of it. If she did not think about it, then she was heedless of her safety in entering a place of obvious peril. If she did think about it, then she had no reasonable basis for thinking it was safe to cross the track as she did. She did not expect the car would start until she had crossed the track and even until she had boarded the car. But no reason for her expectation has been suggested. It was her thought that the motorman was unaware of her presence and as the situation presented itself she gave it no intelligent or reasonable consideration from the standpoint of her safety. Her testimony shows no expectation that she could enter the car by its right front door. As a frequent rider she was aware that the north side door was the only one opened at the stop. The chance that the car would not start as it did was taken with no reason to think so. She took the chance with no regard or allowance for the chance that it would thus start. Her mind was closed to the danger or else she heavily underestimated it. Her reliance was on a hope with no fair basis for its support. In reason-

able prudence anyone in her place would have taken more precaution for safety, either in first attracting the motorman's attention or in crossing the track at a reasonably safe distance ahead of the front of the car. The fact that the car was standing warranted no reasonable assumption that it would remain so, or that she would have due warning of its start. The custom of others to pass in front of the car before it started was not shown to be one of passing closely to it and in disregard of the chance of its starting. If there was an emergency for haste on her part, it was of her own creation. And the saving of time in reaching her home by taking the car was of negligible importance in comparison with that of her safety of person. Her need to take the car was not urgent enough to dispense with precaution.

"The obligation to exercise care is not satisfied by unexplained absence of action and thought in a situation of known danger" (*O'Hare* v. *Company*, 71 N. H. 104, 107), and equally it is unsatisfied by failure to take care to avoid a danger obvious to, and appreciated and realized by, a person of normal intelligence. The plaintiff is not barred from recovery because she assumed a known risk, but because she took no care to avoid a risk that was obvious. She owed it to herself to think (*Cronin* v. *Company*, 75 N. H. 319) and any care in thought would have told her that she was taking a risk which as a duty of self-protection was to be avoided. Care to avoid the risk was demanded because in ordinary conduct it would have been taken.

In brief, the plaintiff took no precautions for her safety when some precaution was required as a demand of ordinary care, and the conclusion of her contributory fault must be made. She "was not in a position where" [she] "could rely on the defendant's care to save [her] from disaster" (*Murphy* v. *Granz*, 91 N. H. 244, 247), and she could not reasonably think that her own conduct was safe. "Where the conduct and knowledge of the plaintiff are fully disclosed and show nothing from which the use of care could be found, but, on the contrary, plainly establish his negligence, the defendant is entitled to a directed verdict." *Bursiel* v. *Railroad*, 82 N. H. 363, 369. All fair minded persons would charge the plaintiff with causal fault.

Further discussion of the case becomes unnecessary.

*Judgment for the defendant.*

**All concurred.**