The ESTATE OF Martha BURGESS and Gerald Larson, Plaintiffs-Appellants, †

v.

Carl PETERSON, an individual, and Peterson Law Offices, a sole proprietorship, Defendants,

ESTATE OF Ralph GRUNDMAN, as Personal Representative of the Estate of Martha Burgess, and EDNA GRUNDMAN, as personal representative of the Estate of Martha Burgess, Defendants-Respondents,

OLD REPUBLIC SURETY COMPANY, a Wisconsin corporation, and STATE SURETY COMPANY, a foreign corporation, Defendants-Third Party Plaintiffs-Respondents,

Glenyce Roberta PETERSON, Third Party Defendant.

Court of Appeals

*No. 94–3043. Submitted on briefs June 12, 1995.—Decided July 25, 1995.*

(Also reported in 537 N.W.2d 115.)

†Petition to review denied.

55

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Michael J. Neitzke* of *Novitzke, Gust & Sempf* of Amery.

On behalf of the defendants-third party plaintiffs-respondents, the cause was submitted on the brief of *Bruce Gillman* of *Tomlinson, Gillman & Rikkers, S.C.* of Madison.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Kristina M. Bourget* of *Kelly & Ryberg, S.C.* of Eau Claire.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J.   The Estate of Martha Burgess and Gerald Larson (the estate) appeal a judgment dismissing their claims against the personal representatives, Ralph and Edna Grundman. The estate asserts that the trial court erred by: (1) admitting the testimony of the Grundmans' expert witnesses; (2) improperly instructing the jury by failing to include a list of duties charged to a personal representative by statute; (3) admitting evidence of the financial consequences of the bonds covering the Grundmans; (4) including information of the possible financial consequences to the Grundmans in the jury instructions; (5) refusing to admit evidence of the Grundmans' current financial situation into evidence; (6) instructing the jury that, if a personal representative used reasonable care in selecting an attorney to assist them in probating an estate, the personal representative could only be found negligent in limited circumstances; (7) not including the name of the judge who ordered the probate bonds in the caption of the case as required by statute; (8) striking the testimony of several of its experts after trial; and (9) granting the Grundmans' motion to dismiss. Because we conclude that the trial court did not commit reversible error, the judgment is affirmed.

## BACKGROUND

Carl Peterson was a well-known and respected attorney. Martha Burgess was one of his clients. Some-

time in 1985, Burgess gave Peterson power of attorney over her affairs. From that point until her death, Peterson handled and managed all of Burgess' assets and investments and paid her bills and expenses. On July 10, 1990, Burgess died leaving an estate valued at $1,600,000. At the request of the estate's personal representative, Peterson assisted in handling the probate of the estate. Before his connection with the estate was ultimately severed, Peterson embezzled over $400,000.[1]

In her will, Burgess nominated her brother, Ralph Grundman, to be the personal representative of her estate. The trial court approved Ralph's nomination and his bond in the amount of $1,000,000 by State Surety Company in 1990. Shortly thereafter, Ralph engaged Peterson to aid in the probate of the Burgess estate. This required Peterson to inventory and liquidate estate assets, pay the estate's expenses, pay whatever taxes were due, file the required tax forms, compute and pay distributions and assist in all other legal tasks necessary to complete the probate of the estate.

During Ralph's tenure as personal representative, his wife, Edna, would usually accompany him when he visited Peterson's law office. Edna sometimes sat in on her husband's conferences with Peterson, while other times she remained in the waiting room. During these visits, Ralph discussed the Burgess estate with Peterson. Also, during his term as personal representative, Ralph signed a number of large checks payable to Peterson or the Peterson Law Office trust account. These checks totaled $375,027.28, the largest of which was $200,000. Ralph paid the other estate expenses

---

[1] At the time of the trial, Peterson had agreed to plead guilty to two counts of theft.

directly. Edna assisted Ralph in balancing the estate accounts on a monthly basis.

Ralph was diagnosed with cancer in October of 1990, and died from the disease on February 5, 1991. After his death, the court appointed Edna personal representative of the Burgess estate. As required by the court, she furnished a bond in the amount of $1,500,000 by Old Republic Surety Company. She also decided to continue to retain Peterson in probating the Burgess estate.

In December 1991, Edna received two notices of delinquent taxes from the IRS. She forwarded these notices to Peterson, expecting that he would tend to the matter. In March 1992, the IRS attempted to place a lien on her home for the taxes due on the Burgess estate. At this time, she became concerned about Peterson's performance and sought the advice of a different attorney.

In April 1992, the court granted a motion by an heir of the Burgess estate to have Edna removed as personal representative. On February 1, 1993, the estate filed suit against Peterson, his law offices, the estate of Ralph Grundman, Edna Grundman, Old Republic Surety Company and State Surety Company. The estate alleged that: (1) the Grundmans had been negligent in their handling of the Burgess estate; (2) Peterson and his law offices had intentionally misappropriated funds; and (3) the bonding companies were obligated to indemnify the estate for the damages the Grundmans caused.

All the parties to the suit filed summary judgment motions. The trial court granted the estate's summary

judgment motion against Peterson,[2] but denied all of the remaining motions. At the jury trial, both sides presented testimony by expert witnesses evaluating the Grundmans' conduct. The estate's experts were asked a number of hypothetical questions. The trial court precluded the parties from asking certain questions until there was some evidentiary basis for them. The trial court allowed some of the other questions, but stated that if the fact scenarios they were based on failed to be shown, it would strike the answers.

Each of the estate's experts opined that the Grundmans had acted negligently. When asked for the basis of their opinions, each cited his or her experience and impressions as to what average reasonable people did or would do in similar situations.

The Grundmans also called a number of expert witnesses and asked them to evaluate the Grundmans' performance as personal representatives of the Burgess estate. The witnesses, Judge Robert Pfiffner, Judge Gary Schlosstein and Attorney Thomas Sazama, each stated his opinion that the Grundmans had acted properly. When asked for the basis of their opinions, Pfiffner and Sazama stated that their opinions were based in part on the Grundmans' age and education. Schlosstein answered the questions without reference to age or education.

The estate objected to the testimony of Pfiffner and Sazama on the basis that it was based upon improper factors, and not merely the objective factors required under the reasonable person test. However, the trial

[2] The summary judgment motion against Peterson was granted on July 5, 1994, in the amount of $466,170.57, which included pre-judgment interest.

court disagreed and admitted the testimony. The jury found that the Grundmans had not been negligent.[3]

At the hearing on motions after the trial, the estate moved to have the jury's verdict set aside and for a new trial. The trial court denied the estate's motion and granted judgment on the jury verdict.

## DISCUSSION

The estate first asserts that the trial court erred by admitting the testimony of the Grundmans' experts regarding their alleged negligence because the opinions were based upon subjective factors. It reasons that admitting this evidence was prejudicial error because had the evidence been properly excluded, the jury would probably have believed its experts, and therefore decided the case in its favor. We agree that consideration of subjective factors was error, but conclude the error was harmless.

The admissibility of evidence, whether testimonial or physical, is a matter within the sound discretion of the trial court. *State v. Migliorino,* 170 Wis. 2d 576, 590, 489 N.W.2d 678, 683 (Ct. App. 1992). It is also within the court's discretion to allow expert testimony when such testimony is likely to assist the jury in reaching a decision. Section 907.02, STATS. The trial court's exercise of discretion will not be overturned upon appeal if it has a reasonable basis and was made in accordance with accepted legal standards. *Hartung v. Hartung,* 102 Wis. 2d 58, 66, 306 N.W.2d 16, 20 (1981). Further, reversal is not required in all situa-

---

[3] The jury did return a verdict for punitive damages against Peterson for $500,000. The actual damages portion of the civil action against Peterson had already been settled by summary judgment. *See* note 2.

tions where evidence has been erroneously admitted. *See* § 805.18(2), STATS. Before reversal is necessary, it must be shown that, had the erroneously admitted evidence been excluded, the result would probably have been different. *Nimmer v Purtell,* 69 Wis. 2d 21, 39, 230 N.W.2d 258, 268 (1975). The questions we must therefore address are whether the factors considered by the Grundmans' experts, in particular: age, education, personal relationship with the attorney and the attorney's familiarity with the estate, were proper and, if not, would the result probably have been different without the questioned testimony.

Whether the age of an adult is an objective factor in assessing negligence is an issue that has not been directly addressed by Wisconsin appellate courts.[4] However, a number of other jurisdictions have addressed the issue. They have uniformly held that age may be considered in limited circumstances, particu-

---

[4] It is well established under Wisconsin law that age may be considered when examining the actions of a minor. *See Willenbring v. Borkenhagen,* 29 Wis. 2d 464, 467, 139 N.W.2d 53, 55 (1966) (child seven or older is capable of negligence, but age should be considered); *Metcalf v. Consolidated Badger Co-Operative,* 28 Wis. 2d 552, 558, 137 N.W.2d 457, 460 (1965) (in apportioning negligence between child and an adult, child's age must be considered); *Rockweit by Donohue v. Senecal,* 187 Wis. 2d 170, 185, 522 N.W.2d 575, 581 (Ct. App. 1994) (child under seven incapable of negligence as a matter of law). However, there are some situations where considering a child's age is improper. *See Shaw v. Wuttke,* 28 Wis. 2d 448, 460, 137 N.W.2d 649, 654-55 (1965) (legal effect of violation of safety statute not dependant on age); *Strait v. Crary,* 173 Wis. 2d 377, 382-83, 496 N.W.2d 634, 636 (Ct. App. 1992) (child's age should not be considered when child engaged in an adults-only or licensed activity).

larly instances in which old age was the cause of a physical infirmity. *See Loring v. Yellow Cab Co.,* 337 N.E.2d 428, 431 (Ill. App. 1975) (age may be considered when elderly man's movements were visibly slow); *O'Connor & Raque Co. v. Bill,* 474 S.W.2d 344 (Ky. 1971) (age is not a proper factor absent evidence of age-related physical problem); *Garner v. Crawford,* 288 So. 2d 886, 888 (La. App. 1973) (relaxed standard of care for those with age-related disabilities); *LaCava v. New Orleans,* 159 So. 2d 362, 364 (La. App. 1964) (age alone not an excuse for negligence); *Brunner v. John,* 274 P.2d 581, 582 (Wash. 1954) (age may be considered when there is evidence of a physical infirmity). These courts agree that, when no evidence of age-related illness is presented, it is improper to consider age as an objective factor. *See LaCava,* 159 So. 2d at 364. The logic for this position is that, while it is impossible to quantify or measure the degree to which age slows thought processes, physical infirmities (e.g. arthritis, osteoporosis, etc.) have physical manifestations that can be objectively observed and measured. This allows for positive proof that a person is suffering from a certain condition. It assures that elderly persons who are negligent will not be shielded from liability for their acts by claiming that they "aren't as sharp as they used to be." We find these cases persuasive and adopt this line of reasoning.

In Wisconsin, certain individuals are held to a higher standard of conduct because of their education or experience. In this case, however, the Grundmans' limited formal education was used as a basis for lowering the standard of care required of them.

■

The problems associated with assessing an individual's education have long been recognized. While

the issue of an individual's educational background has been addressed generally by Wisconsin courts, no case has addressed this specific question. This issue was eloquently addressed by Justice Holmes, however, when he stated that:

> The law takes no account of the infinite varieties of temperament, intellect, and education which make the internal character of a given act so different in different men. It does not attempt to see men as God sees them, for more than one sufficient reason. In the first place, [there is] the impossibility of nicely measuring a man's powers and limitations . . . . But a more satisfactory explanation is, that, when men live in society, a certain average conduct . . . is necessary to the general welfare. . . . His neighbors accordingly require him, at his proper peril, to come up to their standard, and the courts they establish decline to take his personal equation into account.

HOLMES, THE COMMON LAW, 108 (1881). The jurisdictions that have considered this argument have followed Holmes's reasoning. *See Fritscher v. Billiot,* 112 So. 2d 755, 756 (La. App. 1959) (poor judgment no excuse for negligence); *Masters v. Public Service Co.,* 25 A.2d 499, 501 (N.H. 1942) (failure to think will not relieve liability); *Cronin v. Columbian Mfg.,* 74 A. 180, 180 (N.H. 1909) (people have a duty to think); *Crosslin v. Alsup,* 594 S.W.2d 379, 380-81 (Tenn. 1980) (inattention or agitation no excuse for negligence). These courts have refused to consider the individual's level of education when determining negligence. Again, we find the logic of these courts persuasive and adopt their reasoning.

In the case at bar, the record is devoid of any evidence showing that either of the Grundmans suffered any age-related disability that would affect their cogni-

tive abilities. Therefore, allowing age and education to be considered was improper. Thus, the trial court should have sustained the estate's objection regarding evidence of the Grundmans' ages and educations.

However, we conclude that this error was harmless. Our conclusion is based on a number of factors. First, the testimony of Pfiffner and Sazama, when examined as a whole, was based on the proper standard.[5] They stated at numerous points that they believed the Grundmans had acted as normal or average persons would act. The expert witnesses considered age and education as mere peripheral factors. Second, the testimony of the Grundmans' third expert, Schlosstein, was based entirely on objective factors. Schlosstein stated repeatedly that the defendants had acted reasonably, as an average person would act. Third, the testimony of the estate's own witnesses was properly based and served to blunt any effect the testimony of these witnesses may have had. Finally, and most importantly, the trial court, both during testimony and in its jury instructions, correctly stated and informed the jury that they were to examine the Grundmans' conduct based on objective factors. The trial court made it clear to the jury that the Grundmans' actions were to be considered in comparison to how the average, reasonable person would have acted. We therefore conclude that there is no probability that the result would have been different in the absence of these errors.

---

[5] While on the stand, each expert was asked to state whether they thought Ralph Grundman was negligent, to which all the experts replied no. They were then asked the basis of their opinions. Two of the three experts admitted that their opinions were based, at least in part, on subjective factors.

69

The estate also asserts that it was improper to allow testimony based in part on the knowledge that the Grundmans knew Peterson personally, that Peterson was familiar with the estate, and that he had been trusted by Burgess to handle her affairs. The estate asserts that these are subjective factors. We disagree. These considerations are part of the factual framework within which the Grundmans' actions are to be judged. Thus, opinions that considered these factors were properly admissible.

Next, the estate asserts a number of errors regarding the admission of evidence of the financial consequences of the bonds covering the defendants. It argues that the trial court erred by allowing evidence of the financial consequences of the bonds, including a statement of the financial consequences in the jury instructions and not allowing evidence of the Grundmans' financial situation. It argues that this evidence appealed to the jury's sympathies and asserts that this was improper and highly prejudicial.

The question of the admissibility of evidence of the financial consequences of bonds has never been directly addressed by a Wisconsin appellate court. However, there is a large body of law assessing this same question as it relates to liability insurance. The differences between liability insurance and the bonds as they relate to this case are insignificant. Further, there are a number of cases that discuss whether a jury should be allowed to learn the effects of their decisions. Therefore, we will look to this body of law for guidance. We must determine whether it was appropriate to admit the financial consequences evidence and whether it was proper to include a statement of the

possible consequences to the Grundmans in the jury instructions.

Section 904.11, STATS., states that evidence whether a person is insured against liability is generally inadmissible upon the issue of negligence. Further, our supreme court has long stated that it is usually reversible error to inform the jury, either directly or impliedly, of the ultimate effects of its answer. *Kobelinski v. Milwaukee & S. Transp. Corp.,* 56 Wis. 2d 504, 520-21, 202 N.W.2d 415, 425 (1972). The purpose of this rule is to insure that juries make their decisions based upon the evidence in front of them, and not upon sympathies or concerns for the parties involved in the action. *Id.* However, the trial court has wide discretion with regard to jury instructions, and the trial court's refusal to adopt the suggested instructions of either party does not automatically constitute error. *Nelson v. Taff,* 175 Wis. 2d 178, 186, 499 N.W.2d 685, 688-89 (Ct. App. 1993). Further, it is within the trial court's discretion to correct previous error or to dispel misconceptions. *State v. Williamson,* 84 Wis. 2d 370, 394, 267 N.W.2d 337, 348 (1978); *see also* § 805.13, STATS. We will not find error on appeal if the jury instructions given adequately cover the applicable law. *Nelson,* 175 Wis. 2d at 186, 499 N.W.2d at 688-89.

In the instant case, the evidence of the bonds and the bonding companies should have been excluded as a corollary application of § 904.11, STATS. This court notes that the estate opposed the Grundmans' motion in limine to prevent references to the bonding companies or the bonds covering the Grundmans. Obviously, the estate wanted to be able to refer to the bonding companies to provide a "deep pocket" for the jury. The

71

estate now complains because their strategy backfired on them. However, strategies aside, allowing such information into evidence was error.

Realizing its error, the trial court attempted to offset whatever prejudice this information created by including a statement of the possible financial consequences in its jury instructions. The disputed instruction reads:

> These surety or bonding companies are not insurance companies. In other words, if the personal representatives are found liable and the bonding companies pay, the bonding companies have the right to seek recovery for what they have paid from the personal representatives. The bonding agreements provide that if they are caused to respond in damages to the plaintiffs, they have a right to be repaid in full from the personal representatives, together with costs, attorney's fees, and expenses.

This language provides the jury with information about the ultimate effect of its answers. However, the trial court provided such information to correct previous error and to dispel a misconception created by the estate. By allowing evidence of the bond to enter the trial at all, the court erred by providing a deep pocket for the jury. The estate magnified this error by suggesting, through its actions at trial, that the bonding companies worked like insurance companies. These factors tend to create inflated jury awards as the jury thinks that "it is only the company who will have to pay." However, by including a statement of the possible financial ramifications in its jury instructions, the trial court created sympathy for the defendants. These effects are polar opposites of one another, one aiding

the estate, the other the Grundmans. We conclude that these two actions "canceled" each other out, and that thus, there is no probability that the jury would have reached a different result had all this information been excluded.

■■

The estate also argues that the trial court erred by refusing to allow information of the Grundmans' current financial status into evidence. Evidence of the Grundmans' financial status is completely irrelevant to proving negligence and, therefore, was correctly excluded.

Next, the estate argues that the trial court erred in its instructions to the jury regarding the selection of an attorney to assist in the probate of the estate. The estate claims that the instruction frees the personal representative from all liability if they used reasonable care in initially selecting the attorney. We are not persuaded.

■■■

We must determine whether the instructions given to the jury adequately cover the law. To do so, we must examine the statute covering the actions of personal representatives. The interpretation of a statute is a question of law that we review without deference to the trial court. *DOR v. Milwaukee Brewers Baseball Club,* 111 Wis. 2d 571, 577, 331 N.W.2d 383, 386 (1983).

In the instant case, the estate asserts that the instructions given to the jury do not accurately represent the law. The questioned instruction reads as follows:

In carrying out his or her duties, the personal representative may hire professionals such as an attorney or accountant to assist in the performance

73

of the duties of a personal representative. If a personal representative exercises reasonable care in selecting a reputable, competent attorney to assist in managing the estate, the personal representative is not negligent unless the personal representative has reasonable grounds to believe that the attorney was engaging in conduct that was likely to cause the estate to suffer harm. A personal representative may not completely surrender all the duties of the personal representative to the attorney.

The estate argues that this language relieves the personal representative from all liability for misconduct by the attorney if they used reasonable care in selecting the attorney.

■

Contrary to what Larson asserts, this language does not convey absolute freedom from liability for a personal representative. Section 881.01, STATS., requires a personal representative to use reasonable care in handling the affairs of the estate they are overseeing. This jury instruction merely conveys that if the personal representative's attorney takes actions that would make the average person concerned, but the personal representative does nothing, he is liable for any misconduct by the attorney. To hold the personal representative liable in the absence of reasonable grounds for suspicion would amount to strict liability. We reject any suggestion that § 881.01 was intended to create such far reaching liability. Thus we conclude that the instructions do not misstate the law.

Next, the estate argues that the trial court erred by failing to include the name of the judge appointing the Grundmans in the caption of the action. While it is true that state statute does require judges issuing probate bonds be a named party in actions on the bonds,

*see* § 878.09, STATS., the estate fails to show how such a refusal substantially affected its rights at trial.

It is true that there is no express authority to alter an action's title. However, an examination of Wisconsin's statutes as a whole reveals that the trial court's action was proper. The statutes are replete with sections allowing the court to take action to prevent prejudice to either party. Section 803.09, STATS. (discretion to allow intervention in lawsuit if, in court's opinion, will not cause prejudice); § 852.09, STATS. (discretion to divide assets as necessary to prevent prejudice); § 901.04, STATS. (discretion to determine existence of evidentiary privilege); § 904.03, STATS. (discretion to exclude relevant evidence to prevent prejudice); § 971.22, STATS. (discretion to change location of trial to prevent prejudice). In the instant case, the trial court indicated that having a judge as a named party would create prejudice. Our society holds judges in high regard. Judges are highly visible and are generally regarded as being well educated. The trial court surmised that having a judge as a named party would create the implication that, "if they have a judge on their side, they must be right." We conclude that altering the caption of the action to prevent prejudice was within the discretionary power of the trial court.

Finally, the estate claims two points of error regarding the striking of the testimony of several of its experts after trial and the delayed granting of the Grundmans' motions to dismiss. During motions after the trial, the trial court struck the testimony of the estate's experts. The court stated that without the testimony of these experts that the estate failed to carry its burden of proof and the Grundmans were therefore entitled to judgment as a matter of law. The estate

asserts that these actions were erroneous for a number of reasons. However, because the trial court alternatively granted judgment on the jury verdict, these points of error are moot and we therefore do not address them.

*By the Court.*—Judgment affirmed.